[No. S003784. Mar. 20, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DARYL HARRISON, Defendant and Appellant.

## COUNSEL

E. Stephen Temko, under appointment by the Supreme Court, and Howard C. Cohen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Janelle B. Davis, Michael B. Wellington and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EAGLESON, J.**—We granted review in this case to consider (1) whether a criminal defendant may be convicted of multiple statutory violations (Pen. Code, § 289, subd. (a))[1] where he commits identical sex acts which are briefly interrupted by his use of force and the victim's struggles *and,* if so, (2) whether section 654 precludes separate punishment for each conviction.

The first issue focuses on the language of section 289, a relative newcomer in the legislative scheme governing sex crimes. At all pertinent times, this section has proscribed certain "penetration[s], however slight, of the genital or anal openings of another person" by "any foreign object, substance, instrument, or device." In light of preexisting legislative and judicial treatment of similar language elsewhere in the same scheme, we conclude that the offense described by section 289 may be deemed complete the moment "penetration" occurs. We also conclude, in keeping with a *near-unanimous* line of appellate authorities, that each similar sexual "penetration" which occurs during a continuous sexually assaultive encounter may constitute a separate statutory violation. Here, defendant's three convictions under section 289, subdivision (a), were properly affirmed on appeal.

The second question concerns the manner in which we have applied section 654 to multiple sex offenses arising out of a single course of

---

[1] All further statutory references are to the Penal Code.

criminal conduct. As we observed in *People* v. *Perez* (1979) 23 Cal.3d 545, 552-553 [153 Cal.Rptr. 40, 591 P.2d 63], section 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the "sole" aim of achieving sexual gratification. Further, there is no basis for distinguishing between defendants solely because of the type or sequence of sex acts committed, or because the victim made continuous sexual "penetration" difficult. In relying on a *uniform* line of post-*Perez* cases finding no section 654 bar to multiple punishment for rapidly repeated crimes, the Court of Appeal properly found no reason to disturb the consecutive sentences imposed herein.

We will therefore affirm the judgment of the Court of Appeal.

## FACTS

Approximately 5:15 a.m. on June 12, 1985, Virginia N., who lived alone and was legally blind, was awakened by a noise in her apartment. Hearing footsteps, she put on her eyeglasses, sat up in bed, and started to reach for the phone. As she did so, defendant rushed through the bedroom door towards the bed.

Virginia immediately started to scream and raised her arms to protect her face. Defendant grasped her shoulders and began hitting her in the face and upper arms. He then reached inside her underwear and inserted his finger into her vagina. While he was doing so, Virginia continued to struggle and ended up standing on the bed. She eventually pulled away and dislodged defendant's finger, which had been in her vagina for four seconds.

Virginia continued to scream and defendant continued to hit her. He then pushed her so that she was lying on the bed, and he was in a kneeling position beside her. He placed his hand over her mouth and again inserted his finger into her vagina. Meanwhile, Virginia pried defendant's hand away from her mouth, and he hit her in the face. She rolled to the other side of the bed, tried to kick defendant, and again dislodged his finger from her vagina. This second penetration lasted approximately five seconds.

Virginia then stood up and started to run for the door. Defendant grabbed her by the hair, pulled her towards him, and punched her in the throat. He then inserted his finger into her vagina a third time. She continued to struggle and the two ended up on the floor with defendant on top, still hitting her. While they were in this position, Virginia told defendant, "If you'll just stop this, we can do it." Virginia felt the pressure of his body lessen, and she scrambled into the bathroom. She locked the door and was able to alert the neighbors with her screams. The third penetration lasted

approximately five seconds, and "the entire attack," according to Virginia's testimony, lasted seven to ten minutes.

Defendant was charged with three counts of violating section 289, subdivision (a),[2] and burglary (§ 459). The information also alleged that defendant was "convicted of the felony of assault with a deadly weapon" (§ 245, subd. (a)(1)) in 1983, for which he "received probation." In his ensuing motion under section 995, defendant argued, inter alia, that two of the sex offenses should be dismissed because only one "indivisible" crime had occurred. The motion was denied.

The jury found defendant guilty of all three sex crimes and of burglary. Defendant also admitted the prior conviction.

At the sentencing hearing, defendant insisted, among other things, that section 654 precludes multiple punishment where only one "kind" of crime is committed during a brief sexual assault. However, the court cited sections 1170 and 1170.1, subdivision (a), and various factors in aggravation, and imposed a total seventeen-year sentence as follows: the upper term of eight years on one of the sex crimes; a consecutive sentence of one-third the middle term (i.e., two years) on each of the other two sex crimes; the upper term of six years on the burglary, with execution of that sentence stayed pursuant to section 654;[3] plus a consecutive, five-year "serious felony" enhancement for the prior conviction. (See § 667, subd. (a).)

On appeal, defendant reiterated that only one violation of section 289, subdivision (a), had occurred and, alternatively, that he could be punished for only one such conviction under section 654. The Court of Appeal disagreed, and affirmed the judgment with regard to the sex offense and burglary convictions. However, upon the urging of both defendant and the Attorney General, the court reversed and remanded for resentencing solely on the grounds that there was insufficient evidence to support the five-year enhancement. The enhancement portion of the Court of Appeal's judgment is not disputed here.

---

[2] The information also alleged three alternative counts of rape (§ 261, subd. (2)), which were dismissed upon defendant's motion following presentation of the prosecution's case-in-chief.

[3] In support of its decision to impose the upper term on the principal sex offense and the burglary, the court found that the victim was particularly vulnerable, and that defendant's pattern of criminal activity indicates that he is a serious danger to society. (See rule 421(a)(3), (b)(1), Cal. Rules of Court.) In support of its decision to impose consecutive sentences on the two subordinate terms, the court found that defendant failed to "cease and desist" when each sexual penetration was interrupted, thereby committing separate acts of violence; that numerous convictions were involved; that the crime displayed a high degree of cruelty; and that defendant was on probation for assault with a deadly weapon when the crime was committed. (See rules 425(a)(2), (5), 421(a)(1), (b)(4), Cal. Rules of Court.)

DISCUSSION

A. *Number of Convictions*

 Defendant renews his argument that multiple digital penetrations, committed during a brief "continuous" assault upon a struggling victim, constitute only a single violation of section 289. In effect, he suggests that, under such circumstances, the statutory offense extends from the initial penetration through final withdrawal, even though multiple penetrations have actually occurred in the interim. As we shall explain, this claim is belied by the plain meaning of section 289, and by the consistent interpretation of sister statutes which use materially similar language.

Preliminarily, we note that since its origin in 1872, the Penal Code has defined and prescribed punishment for the crimes of rape (§§ 261, 263, 264)[4] and sodomy (§§ 286, 287).[5] The predecessor to the current section governing oral copulation was enacted in 1915, and completes a basic trilogy of sex crimes. (§ 288a.)[6]

However, before 1979, there was no felony proscription per se against nonconsensual contact with, or penetration of, another person's genitals or anus through the use of an instrument or body part other than the mouth or penis. Such conduct (assuming it did not invoke the various statutes relating to sexual conduct with minors) presumably would have been prosecuted as a battery. Absent serious bodily injury, it could have been punished as a misdemeanor. (See §§ 242, 243, subds. (a), (d); cf. § 243.4 [defining "sexual battery," added by Stats. 1982, ch. 1111, § 1, p. 4024].)

Apparently perceiving a deficiency in its treatment of sexually assaultive behavior, the Legislature enacted section 289. (Stats. 1978, ch. 1313, § 1,

---

[4] Section 261 defines rape as "an act of sexual intercourse" accomplished with a nonspouse under certain specified "circumstances," listed in subdivisions (1) through (7).

Section 263 provides: "The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape. *Any sexual penetration, however slight, is sufficient to complete the crime.*" (Italics added.)

Section 264, subdivision (a), provides, in pertinent part, that "[r]ape, as defined in Section 261, is punishable by imprisonment in the state prison for three, six, or eight years."

[5] Section 286, subdivision (a), defines sodomy as "sexual conduct consisting of contact between the penis of one person and the anus of another person." Subdivisions (b) through (*l*) provide that participation in, or commission of, the act of sodomy under numerous specified circumstances is subject to the punishment described therein.

Section 287 provides: "*Any sexual penetration, however slight, is sufficient to complete the crime of sodomy.*" (Italics added.)

[6] Section 288a, subdivision (a), defines oral copulation as "the act of copulating the mouth of one person with the sexual organ or anus of another person." Subdivisions (b) through (*l*) provide that participation in, or commission of, the act of oral copulation under certain specified circumstances is subject to the punishment described therein.

p. 4300; see also, *People* v. *Kusumoto* (1985) 169 Cal.App.3d 487, 491 [215 Cal.Rptr. 347]; *Review of Selected 1978 California Legislation, Crimes* (1979) 10 Pacific L.J. 392.) Since its original enactment, the statute has been greatly expanded in scope.[7] However, section 289 has always made clear that the crime is committed simply by causing a proscribed "penetration, *however slight.*" (Italics added.) From this language, we can only conclude that, assuming all other elements of the offense are present, a violation is *complete* the moment such "penetration" occurs.

Using materially similar language, the Legislature has explicitly so provided in the statutes governing rape and sodomy. The section which describes the basic elements and circumstances attending the crime of rape (§ 261) is modified by companion language in section 263, which states, in part: "*Any sexual penetration, however slight, is sufficient to complete the crime.*" (Italics added.) Identical language in section 287 accompanies the sodomy statute (§ 286): "*Any sexual penetration, however slight, is sufficient to complete the crime* of sodomy." (Italics added.) Except for minor word changes not pertinent here, sections 263 and 287 have remained unchanged since their enactment. Both were in existence long before section 289 became law, and both relate to the same subject matter—unlawful penetrations of the genitals and anus.

---

[7] At the time of the instant crimes, section 289 made the proscribed "penetrations" criminal under only two basic circumstances—when committed under force or fear, or when the victim was incapable of consenting due to "lunacy or other unsoundness of mind." (Former § 289, subds. (a), (b).)

Defendant was convicted under former section 289, subdivision (a), which provided: "Every person who causes the *penetration, however slight,* of the genital or anal openings of another person, by any foreign object, substance, instrument, or device when the act is accomplished against the victim's will *by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury* on the victim or another person for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)

Section 289 *currently* makes it unlawful to commit sexual penetrations-by-object in a far greater number of cirumstances. Briefly summarized, they involve: (a) use of force, fear, or threat of future retaliation; (b) inability to consent due to mental disorder or developmental or physical disability, (c) inability to consent due to mental disorder or developmental or physical disability, and both the victim and defendant are confined in a specified facility for the care of such persons; (d) unconscious victim; (e) inability to resist due to administration of intoxicating or other controlled substance; (f) submission induced by false belief that perpetrator is victim's spouse; or (g) threatening to use the authority of a public official to incarcerate, arrest, or deport. In addition, subdivisions (h) through (j) proscribe participation in the act where the victim and/or other participant is of a certain age.

An amendment effective January 1, 1989, significantly broadens the circumstances under which a "penetration" may trigger the statute. (Stats. 1988, ch. 404, § 1, No. 3 Deering's Adv. Legis. Service, pp. 1544-1545; No. 6 West's Cal. Legis. Service, pp. 1053-1055.) Subdivision (a) now applies to "[e]very person who causes the penetration, however slight, of the genital or anal openings of any person or causes another person to so penetrate the defendant's or another person's genital or anal openings. . . ." A similar change in language was made in each variation of the crime defined in the statute.

Since the origin of the rape and sodomy statutes, the courts have strictly adhered to the statutory principle that a "penetration," however slight, "completes" the crime. (*People* v. *Chavez* (1894) 103 Cal. 407, 408 [37 P. 389]; *People* v. *Martinez* (1986) 188 Cal.App.3d 19, 22-25 [232 Cal.Rptr. 736]; *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 232-233 [182 Cal.Rptr. 406] [disapproved on other grounds in *People* v. *Jones* (1988) 46 Cal.3d 585, 600 [250 Cal.Rptr. 635, 758 P.2d 1165], fn. 8]; *People* v. *Esposti* (1947) 82 Cal.App.2d 76, 77-78 [185 P.2d 866]; *People* v. *Singh* (1923) 62 Cal.App. 450, 452 [217 P. 121]; *People* v. *Marino* (1917) 33 Cal.App. 448, 451 [165 P. 564].) ■ The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288].) Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction. (*Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499].) ■ Thus, in using identical words to define the analogous act in section 289, the Legislature undoubtedly intended to convey the same meaning. As with rape and sodomy, a violation of section 289 is "complete" the instant "slight" "penetration" of the proscribed nature occurs.

It follows logically that a *new and separate* violation of section 289 is "completed" each time a *new and separate* "penetration, however slight" occurs. Here, defendant does not dispute that his finger actually penetrated the victim's vagina against her will three *separate* times; that *each* penetration was accomplished with the statutorily prescribed intent; that the requisite degree of force or fear preceded, and was used to accomplish, *each* penetration; or that a finger is a foreign object within the meaning of the statute. (See generally, *People* v. *Wilcox* (1986) 177 Cal.App.3d 715, 717 [223 Cal.Rptr. 170]; CALJIC No. 10.60 (1985 rev.).) Accordingly, all the elements of three "completed" violations of section 289 were present.

Defendant acknowledges that section 289 has always defined the crime in terms of "penetration[s]." He suggests, however, that this language was only intended to distinguish between a completed offense and other offenses, such as an attempt, assault with intent to commit the crime, or a battery.

We disagree. Obviously, *one* purpose of the "slight penetration" language used throughout this family of sex-offense statutes is to make clear that prolonged or deep insertion, or emission or orgasm, is unnecessary to "complete" the crime. (See, e.g., *People* v. *Thomas* (1986) 180 Cal.App.3d 47, 53-56 [225 Cal.Rptr. 277]; *People* v. *Karsai, supra,* 131 Cal.App.3d at pp. 232-233.) However, the plain meaning of the phrase does not limit it to that

purpose, and we find no other indication it should be so confined. As section 263 notes with regard to the sufficiency of "penetration" in rape cases, the "essential guilt" of sex offenses lies in the "outrage to the person and feelings of the victim . . . . " The "slight penetration" language confirms that this peculiar "outrage" is deemed to occur each time the victim endures a new, unconsented sexual insertion. The Legislature, by devising a *distinctly harsh sentencing scheme*, has emphasized the seriousness with which society views each separate unconsented sexual act, even when all are committed on a single occasion. (See, e.g., § 667.6, subd. (c).) We find no merit in defendant's limited construction.

Indeed, defendant concedes that where the acts are of an entirely *different* nature, they may result in multiple convictions even if committed in rapid succession. Courts have long assumed that no minimum amount of time must separate such acts, nor must they be punctuated by any other significant nonsexual activity. (See, e.g., *People* v. *Slobodion* (1948) 31 Cal.2d 555, 557, 563 [191 P.2d 1] [lewd touching of vagina with penis, followed immediately by oral copulation]; *People* v. *Phillips* (1985) 169 Cal.App.3d 632, 635, 642 [215 Cal.Rptr. 394] [digital vaginal penetration followed after a brief interruption by rape]; *People* v. *Boyce* (1982) 128 Cal.App.3d 850, 854, 860 [180 Cal.Rptr. 573] [oral copulation followed immediately by rape]; *People* v. *Rance* (1980) 106 Cal.App.3d 245, 249-250, 255 [164 Cal.Rptr. 822] [rape, sodomy, and oral copulation, all apparently committed in uninterrupted succession]; *People* v. *Gay* (1964) 230 Cal.App.2d 102, 103-105 [40 Cal.Rptr. 778] [rape, sodomy, and oral copulation, all apparently committed in uninterrupted succession]; *People* v. *Mills* (1943) 58 Cal.App.2d 608, 609-610 [137 P.2d 698] [rape, sodomy, and oral copulation, all apparently committed in uninterrupted succession].)

Multiple convictions have also been upheld where several *identical* sex crimes are accompanied by commission of a *different* one. In some of these cases, the offenses have been separated by some break in time and/or movement of the victim to a new location. (See, e.g., *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 915-917 [200 Cal.Rptr. 479] [*two* sets of oral copulation and rape over a "short period of time," where victim was allowed to have a cigarette in between each pair of crimes]; *People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 726, 728 [182 Cal.Rptr. 671] [*two* rapes in car separated by an act of oral copulation, two car trips, and violence over three- to four-hour period]; *People* v. *Brown* (1973) 35 Cal.App.3d 317, 321 [110 Cal.Rptr. 854] [rape followed by defendant leaving the room for a short time to commit attempted rape on another victim, and returning to commit rape and sodomy on first victim].)

In other cases, it was never questioned that alternating offenses may follow one another in quick, uninterrupted succession. (See, e.g., *People* v.

*Perez, supra,* 23 Cal.3d at pp. 548-549 [rape, sodomy, and *two* oral copulation convictions, committed during a continuous 45-to-60-minute attack]; *In re McGrew* (1967) 66 Cal.2d 685, 687-688 [58 Cal.Rptr. 561, 427 P.2d 161] [one oral copulation and *two* rape convictions, apparently committed in uninterrupted succession]; *People* v. *Price* (1986) 184 Cal.App.3d 1405, 1407-1408 [229 Cal.Rptr. 550] [rape and sodomy, prefaced by *two* consecutive acts of oral copulation committed within a few moments and feet of each other].)

Although defendant deemphasizes the point, cases involving wholly *identical* sexual acts follow the same pattern. In some of these cases, no issue was raised that the defendant could not be separately convicted for each act. (*People* v. *Martinez* (1984) 150 Cal.App.3d 579, 586 [198 Cal.Rptr. 565] [two defendants convicted of four forcible rapes in concert; the first three rapes were committed consecutively by one defendant over the course of an hour, after which the other defendant committed the fourth rape]; *People* v. *Iverson* (1972) 26 Cal.App.3d 598, 600-601 [102 Cal.Rptr. 913], disapproved on other grounds in *In re Earley* (1975) 14 Cal.3d 122, 130 [120 Cal.Rptr. 881, 534 P.2d 721], fn. 11 [victim testified to three acts of sexual intercourse committed consecutively in car; defendant was convicted of two of them].)

Other "same crime" cases specifically hold that separate convictions are appropriate, finding support in the statutory language deeming the offense complete upon "penetration." In *People* v. *Clem* (1980) 104 Cal.App.3d 337 [163 Cal.Rptr. 553], the court rejected defendant's claim that he could not be separately sentenced for five rape convictions involving one victim. The court cited sections 261 and 263; noted that the evidence indisputedly established five consecutive vaginal "penetrations" during an approximate two and one-half hour assault; and concluded that "[i]t can no longer be argued that where there are multiple sex acts performed upon a single victim, albeit within *a short space of time,* that *each act* does not comprise *a distinct and separate violation* and punishment." (*Id.,* at pp. 346-347, italics added.)

More to the point is *People* v. *Marks* (1986) 184 Cal.App.3d 458 [229 Cal.Rptr. 107]. There, defendant urged reversal of one of two sodomy convictions, claiming that his two anal contacts with the victim were "so close in time" as to constitute a "single offense." (*Id.,* at p. 464.) However, the court affirmed both counts, finding ample evidence of two separate anal "penetrations"—defendant inserted his penis in the victim's anus, withdrew, forced her across the room, repositioned her, and anally repenetrated her. (*Id.,* at pp. 464-467, & fn. 8.) A third case, *People* v. *Vela* (1985) 172 Cal.App.3d 237, 243 [218 Cal.Rptr. 161], contains compatible dictum: "If a

female initially consents to an act of sexual intercourse but thereafter withdraws her consent, *each subsequent act of sexual penetration* accomplished by force or fear *will constitutes a separate and distinct act of rape.*" (Italics added.)

Cases such as *Clem, supra,* 104 Cal.App.3d at page 337, *Marks, supra,* 184 Cal.App.3d at page 458, and *Vela, supra,* 172 Cal.App.3d at page 237, expose an inescapable truth. Multiple violations of section 289 are no less separate or offensive when they occur in sequence than when they are punctuated by violations of other statutes.

Here, however, defendant relies upon *People* v. *Hammon* (1987) 191 Cal.App.3d 1084, 1097 [236 Cal.Rptr. 822], which denounced the *Clem-Marks-Vela* "analysis." Hammon's 11 lewd conduct convictions (§ 288, subd. (a)) were based on photographs, some of which apparently were taken moments apart, depicting defendant and a female infant engaged in oral copulation, sexual intercourse, and other lewd acts. Although defendant raised a section 654 *sentencing* claim, the Court of Appeal reversed four of his convictions on the basis of a new test for determining when a sex offense is completed: "[I]dentical sexual acts constitute separate and discrete crimes when they are separated (1) by the commission of a different sexual offense, (2) by sexual climax, (3) by an appreciable passage of time, or (4) by a reasonable opportunity for reflection." (*Id.,* at p. 1099.)

An initial observation is that *Hammon* failed to analyze the sufficiency of the evidence in terms of the particular statutory violations at issue. Although only a few of the charges in that case required proof of "penetration," the court was troubled by certain *sentencing* disparities it believed this concept generated under section 654. (See 191 Cal.App.3d at pp. 1097-1098.)

Saving all sentencing questions for later (see Discussion, part B, *post*), we conclude that *Hammon* erred by inserting irrelevant factors into the definition of a sex offense. (See *People* v. *Dillon* (1983) 34 Cal.3d 441, 463 [194 Cal.Rptr. 390, 668 P.2d 697] [court is not to sit as a "super-legislature" altering criminal definitions].) The first factor—presence of an intervening different sexual offense—is based upon facts in cases which refused to apply section 654 to preclude multiple *sentences* for multiple convictions. Nothing in these cases can be read as restricting the number of violations which may occur. (*Hammon, supra,* 191 Cal.App.3d at p. 1096, citing *Perez, supra,* 23 Cal.3d at p. 552; *People* v. *Reeder, supra,* 152 Cal.App.3d at pp. 916-917.) And, as already indicated, *Hammon's* second factor—"sexual climax"—has never been dispositive in determining whether a sex offense is statutorily "completed." The last two items—"appreciable passage of time" and

"reasonable opportunity for reflection"—were based on language in section 667.6, subdivision (d), which concerns imposition of mandatory consecutive *sentences* upon certain sex offenders.[8] Nothing on the face of this section purports to affect the manner in which various sex crimes are to be defined in the first instance.

Further, we agree with that portion of Presiding Justice Kremer's opinion for the Court of Appeal in this case which highlights commonsense problems in the *Hammon* test (*supra,* 191 Cal.App.3d 1084): "Examined closely, [the] four criteria . . . actually resolve to but one. The first criterion, . . . separat[ion] by a different sexual offense[,] is always irrelevant to the problem presented since, by definition, one is considering a series of identical offenses *not* punctuated by others. The next two criteria, sexual climax and an appreciable passage of time[,] are actually factual circumstances from which one may conclude that the fourth criterion has occurred, a reasonable opportunity for reflection. *Hammon* then stands for the proposition [that] a series of identical sexual offenses may be said to be separate when . . . one may reasonably conclude that the perpetrator has had a reasonable opportunity for reflection." However, as we noted earlier, this fourth factor was attributed to section 667.6, subdivision (d), where it helps determine whether consecutive *sentences* shall be imposed on defendants convicted of enumerated crimes, not whether separate crimes were committed. From a logical standpoint, the fact that only *some* multiple sex offenders *must* receive consecutive terms on the basis of a "reasonable opportunity for reflection" test suggests that *others* may at least be *convicted* of multiple sex offenses even in the *absence* of this factor. ■■■■ ■ We find the *Hammon* rationale unconvincing.[9]

---

[8] Section 667.6, subdivision (d), *requires* a full consecutive term for each enumerated "violation" if, among other things, the crimes involve "the same victim on separate occasions." For purposes of making this determination under this subdivision, "the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior."

[9] As an alternative to his contention that he committed but one sex offense as a matter of law, defendant urges that the trial court should at least have instructed *sua sponte* on factors similar to those identified in *Hammon*. We disagree. Defendant's suggested instruction provides that in order to convict defendant of "multiple counts of the same type of sexual misconduct" the jury must first find that defendant "intended to inflict and the victim did endure additional outrage to her/his person and feelings." It then goes on to list various "factors" to be used in making such a determination, including time between offenses, changes in location, sexual climax, intervening different sex acts, and the infliction of additional fear, danger or humiliation to the victim with each act.

Obviously, there is no statutory basis for requiring proof that defendant harbored the specific intent to inflict "additional outrage," and that the victim demonstrably suffered such. This element is not mentioned in section 289, subdivision (a), which instead states that the act must be accomplished "for the purpose of sexual arousal, gratification, or abuse." It appears that defendant has read too much into introductory language in section 263, regarding

Finally, we note that despite its continuous recent activity in the area of sex offenses, including the addition of expansive amendments to section 289 (see fn. 7, *ante*), the Legislature has expressed no discernible objection to the steady increase in cases upholding multiple convictions based upon rapid, identical sex acts. For this and other reasons explained above, we find no support for defendant's contention that multiple, nonconsensual sex acts of an identical nature, committed in short succession against a single victim, constitute a single offense.

We hold that each of the digital penetrations committed in the course of defendant's assault upon Virginia N., and highlighted by intervening acts of force, constituted a separate violation of section 289, subdivision (a). ██ ██ ██ ██ ██ Defendant thus properly sustained three separate convictions under that statute.[10] *Hammon, supra,* 191 Cal.App.3d 1084, is disapproved to the extent it conflicts with our analysis here.

## B. *Sentencing*

██ Defendant argues that even if he properly was *convicted* of each penetration, sentence on two of the convictions must be stayed under section 654.[11] His claim is rejected.

---

the sufficiency of penetration in rape cases. ("The essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape.") This language expresses the public harm which the statute is intended to forestall, and has not been viewed as an element of the crime per se. (See § 261, subds. (1)-(7).)

[10] Defendant's reliance on certain cases which describe the commission of multiple sex acts against one victim as a "single" or "continuous" crime is misplaced. (*People v. McIntyre* (1981) 115 Cal.App.3d 899, 910 [176 Cal.Rptr. 3]; *People v. Mota* (1981) 115 Cal.App.3d 227, 233 [171 Cal.Rptr. 212].)

These cases discuss the principles *to be applied where the evidence reveals numerous crimes on numerous dates, any one of which could be the crime charged.* The general rule in such cases is that (1) the prosecutor must elect which act is to support the charges; or (2) the jury must be instructed that it must unanimously agree as to which act defendant committed. (*People v. Castro* (1901) 133 Cal. 11, 12-13 [65 P. 13]; see also, CALJIC No. 17.01.) Such a rule ensures that all jurors agree beyond a reasonable doubt that defendant was guilty of the same act, and provides defendant with a reasonable opportunity to present a defense. (*People v. Williams* (1901) 133 Cal. 165, 168 [65 P. 323].) However, as noted in *McIntyre, supra,* 115 Cal.App.3d at pages 908-910, and *Mota, supra,* 115 Cal.App.3d at pages 231-234, an exception exists where a series of acts are part of the same, continuous transaction. (See *People v. Jefferson* (1954) 123 Cal.App.2d 219, 221 [266 P.2d 564].) In that situation, it is clear that the jury can agree that the crimes were all committed on a certain date, and defendant is not required to perform the near-impossible task of defending against numerous crimes on numerous dates which are not specified in the information.

The instant case does not implicate the foregoing "election" rule, or the "continuous conduct" exception. Defendant was charged with three counts of violating section 289, subdivision (a), on June 12, 1985, and he was convicted of those three crimes. Moreover, defendant overlooks the fact that *McIntyre* and *Mota* applied the continuous-conduct exception so as to *allow* conviction for multiple sex acts committed within a short space of time.

[11] Section 654 provides: "An act or omission which is made punishable *in different ways by* different provisions of this code may be punished under either such provisions, but in no case

■ It is well settled that section 654 protects against multiple punishment, not multiple conviction. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].) The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the "same act or omission." (See, e.g., *People* v. *Siko* (1988) 45 Cal.3d 820, 823-826 [248 Cal.Rptr. 110, 755 P.2d 294].) ■ However, because the statute is intended to ensure that defendant is punished "commensurate with his culpability" (*Perez, supra,* 23 Cal.3d at p. 551), its protection has been extended to cases in which there are several offenses committed during "a course of conduct deemed to be indivisible in time." (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].)

■ It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. (*In re Hayes* (1969) 70 Cal.2d 604, 609 [75 Cal.Rptr. 790, 451 P.2d 430]; see also *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 817-818 [177 Cal. Rptr 627].) We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

If, on the other hand, defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Beamon, supra,* 8 Cal.3d at p. 639.) Although the question of whether defendant harbored a "single intent" within the meaning of section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law. (*Perez, supra,* 23 Cal.3d at p. 552, fn. 5.)

■ In *Perez, supra,* 23 Cal.3d 545, we held that section 654 did not preclude punishment for each sex crime (rape, sodomy, and 2 oral copulation counts) committed during a continuous 45-to-60-minute attack. Defendant argued that his offenses were part of an indivisible transaction, because they furthered his "single intent and objective of obtaining sexual gratification." (*Id.,* at p. 550.) We observed, however, that such a "broad and amorphous" view of the single "intent" or "objective" needed to trigger the statute would impermissibly "reward the defendant who has the greater

---

can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

criminal ambition with a lesser punishment." (*Id.,* at pp. 552-553.) Rather, in keeping with the statute's purpose, the proper view was to recognize that a "defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (*Id.,* at p. 553.) Accordingly, we declined "to extend the single intent and objective test of section 654" beyond the framework set forth in *Neal* v. *State of California, supra,* 55 Cal.2d at page 19, and its progeny. (23 Cal.3d at p. 553.) Since "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental" to any other, section 654 did not apply. (*Id.,* at pp. 553-554.)

Here, defendant cites various cases applying section 654 in other contexts and makes the general argument that his three sex acts were part of a continuous "violent" transaction. (See, e.g., *People* v. *Bauer* (1969) 1 Cal.3d 368, 377 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] ["where a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and [punishment for] other crimes [such as car theft or possession of contraband] on the basis of the taking of the other items is not permissible"].)

However, defendant's reliance on cases dealing with other "violent" crimes is misplaced. *Perez* acknowledged many of the same principles, but noted that there is " 'no universal construction' " directing section 654's application in every instance. (23 Cal.3d at pp. 551-552 [citations omitted] & fn. 4.) *Perez* itself is the touchstone in determining how these general principles are to be applied to sex offenses. Indeed, the Courts of Appeal have routinely applied *Perez* to uphold separate sentences for each sex crime committed in a single encounter, even where closely connected in time. (See, e.g., *People* v. *Phillips, supra,* 169 Cal.App.3d at p. 642; *People* v. *Goldstein* (1982) 130 Cal.App.3d 1024, 1042 [182 Cal.Rptr. 207]; *People* v. *Boyce, supra,* 128 Cal.App.3d at p. 860; *People* v. *Singleton* (1980) 112 Cal.App.3d 418, 424 [169 Cal.Rptr. 333]; see also *People* v. *Rance, supra,* 106 Cal.App.3d at p. 255, fn. 3.)

Defendant insists, however, that *Perez, supra,* 23 Cal.3d 545 is limited in scope, and does not apply where wholly identical sex offenses have been committed in sequence. He claims that he can be punished only once because he harbored "one criminal intent" within the meaning of section 654—to achieve sexual gratification by forcibly penetrating the victim's vagina with his finger. *Perez,* is distinguishable, he contends, because it involved a defendant who chose to satisfy his sexual urges by committing a variety of sex acts.

We note that *Perez* itself made no such factual distinction. Its section 654 analysis was directed to *any* case in which "a number of base criminal acts" were committed against a single victim. (23 Cal.3d at p. 553.) In light of the statute's purpose, no importance was placed on the instrumentality used or body cavity penetrated. Our reasoning was also based, in part, upon two prior decisions of this court in which defendants had *repeated* certain sex crimes. For example, in *People v. Hicks* (1965) 63 Cal.2d 764, 766 [48 Cal.Rptr. 139, 408 P.2d 747], we held that section 654 did not preclude separate punishment for three sex offenses, even though defendant was convicted of *two* counts of oral copulation and one of sodomy against the same victim in the same sexual encounter. The same principle applied in *In re McGrew, supra,* 66 Cal.2d at pages 688 to 689, with regard to punishing defendant's conviction of *two* counts of rape and one of oral copulation.

Defendant correctly observes that neither *Hicks, supra,* 63 Cal.2d 764, nor *McGrew, supra,* 66 Cal.2d 685, informed us of the sequence in which the crimes were committed. He suggests that section 654 may not have applied in those cases because the two similar offenses may have been punctuated by the commission of a different offense. He also notes that in *Perez, supra,* 23 Cal.3d 545, defendant alternated the two crimes which happened to be of the same variety (i.e., oral copulation, sodomy, oral copulation, and then rape).

However, the Courts of Appeal have consistently rejected similar attempts to limit the holding of *Perez, supra,* 23 Cal.3d 545. These cases emphasize that no special treatment is to be afforded to a defendant under section 654 simply because he chose to repeat, rather than to diversify or alternate, his many crimes. (See, e.g., *People v. Marks, supra,* 184 Cal.App.3d at pp. 466-467; *People v. Reeder, supra,* 152 Cal.App.3d at pp. 916-917; *People v. Sanchez, supra,* 131 Cal.App.3d at pp. 728-729; *People v. Van De Water* (1980) 108 Cal.App.3d 166, 169 [166 Cal.Rptr. 321]; *People v. Clem, supra,* 104 Cal.App.3d at pp. 346-347.)

We agree. No purpose is to be served under section 654 by distinguishing between defendants based solely upon the type *or* sequence of their offenses. Such an analysis would dispense punishment on the basis of the sexual taste or imagination of the perpetrator, and would not address the concerns raised in *Perez, supra,* 23 Cal.3d 545. To adopt such an approach would mean that "once a [defendant] has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense," so long as he does not direct attention to another place on the victim's body, or significantly delay in between each offense. (*People v. Reeder, supra,* 152 Cal.App.3d at p. 917.) However, it is defendant's intent to commit a number of separate base criminal acts upon his victim, and not the precise code

section under which he is thereafter convicted, which renders section 654 inapplicable.

Finally, defendant insists that his case is special because only *one* sexual penetration would have occurred but for a fortuitous break in sexual activity. He argues that he is less culpable for section 654 purposes because it was *the victim's* efforts to defend herself which interrupted the initial vaginal penetration and caused subsequent repenetrations.

Under the facts of this case, we would be hard pressed to view the various breaks in vaginal penetration as "fortuitous." It is not surprising that a victim would struggle after she has been suddenly awakened from an early morning sleep by an intruder who rushes through the bedroom door, and begins to beat and sexually assault her.

Moreover, there is no legal or logical bar to separate punishment where, as here, *each of defendant's "repenetrations" was clearly volitional, criminal and occasioned by separate acts of force*. Defendant urges that no greater punishment should befall him simply because the initial offense was interrupted by the victim's struggle. By the same token, however, defendant should also not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually assaultive behavior. As made clear under the *Perez-Hicks-McGrew* line of cases (cited *ante,* at p. 337), the nature and sequence of the sexual "penetrations" or offenses defendant commits is irrelevant for section 654 purposes. Whether defendant ends a break in the activity by renewing the same sex act (as here) or by switching to a new one (as in *Perez, supra,* 23 Cal.3d 545), the result under section 654 is the same.

We therefore decline to extend section 654 beyond the framework set forth in *Perez, supra,* 23 Cal.3d 545. As recognized by the courts below, section 654 does not preclude punishment for each of the sex offenses committed by defendant.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Kaufman, J., and Arguelles, J.,* concurred.

Broussard, J., concurred in the judgment.

**MOSK, J.**—I concur in the judgment. In my view, defendant was properly convicted of three separate violations of Penal Code section 289 (hereinafter

---

* Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

section 289) and was punished for each violation without offense to Penal Code section 654 (hereinafter section 654). Accordingly, I believe that the judgment of the Court of Appeal, which upheld the conviction and sentence in this regard, must be affirmed.

I cannot concur, however, in the majority's opinion.

I have serious doubt that the majority's discussion of section 289 is sound.[1] They interpret the provision to declare unqualifiedly that each time a person "causes the penetration, however slight, of the genital or anal openings of another person," he commits a separate and independent offense: "a *new and separate* violation of section 289 is 'completed' each time a *new and separate* 'penetration, however slight' occurs" (maj. opn., *ante,* at p. 329, italics in original). They base their conclusion on the premise that "a violation of section 289 is 'complete' the instant 'slight' 'penetration' . . . occurs." (*Ibid.*)

I believe that the statutory provision may properly be interpreted to declare that each penetration constitutes a separate offense *in the general case.* But I find it hard to believe that the provision can be read—as it is read by the majority—to declare that each penetration constitutes a separate offense *in all cases and under all circumstances as a matter of law.* Certainly, such an interpretation is not supported by the premise relied on: as the relevant language and its history reveal, the phrase, "penetration, however slight," was intended to distinguish between an attempt and the completed crime, not between one completed crime and another. Moreover, such an interpretation could readily yield untenable results in individual cases.

I also have serious doubt that the majority's discussion of section 654 is sound.[2] They present an extended and intricate analysis to support their conclusion that the provision is inapplicable to the case at bar. In my view, such an analysis is unnecessary. Here, defendant committed not one but *three* acts of penetration, each interrupted by a distinct violent assault. Thus

---

[1] At the time relevant here, section 289 provided in pertinent part: "Every person who causes the penetration, however slight, of the genital or anal openings of another person, by any foreign object, substance, instrument, or device when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison for three, six, or eight years." (Former Pen. Code, § 289, subd. (a), Stats. 1982, ch. 1111, § 6, p. 4026.) For purposes here, the provision in its current form is to the same effect.

[2] Section 654 provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code [i.e., the Penal Code] may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

section 654, which governs when there is a single "act," does not apply. But even if the three acts could be deemed to constitute a single "act" for present purposes, the result would be the same. Section 654 is operative when there is an "act" that is made punishable "in different ways by different provisions" of the Penal Code. The "act" here, however, is made punishable only in one way by one provision.

For the foregoing reasons, although I concur in the majority's disposition I cannot concur in their reasoning.