Filed 8/23/24  P. v. Gonzalez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B330462 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA095505) |
| v. | |
| ROBERTO MERCADO GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Martin Larry Herscovitz, Judge.  Affirmed.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Roberto Mercado Gonzalez appeals the judgment entered following a jury trial in which he was convicted of rape of a person who was unconscious or asleep (Pen. Code,[1] § 261, subd. (a)(4)(A); count 1) and forcible rape (§ 261, subd. (a)(2); count 2). The trial court sentenced appellant to the low term of three years on both counts, to be served concurrently. Appellant contends that the trial court erred in imposing concurrent sentences on counts 1 and 2 rather than staying the sentence on count 2 under section 654. We disagree and affirm.

## FACTUAL BACKGROUND

In September 2021, 19-year-old Diana lived with her mother, stepfather, and six siblings. Her stepfather's parents, three brothers, and two sisters lived in another house on the same property. Appellant is one of Diana's step-uncles (her stepfather's brother). Diana did not like appellant, she had no relationship with him, and they did not interact with each other.

On September 11, 2021, Diana went to a party with one of appellant's sisters (Veronica), one of his brothers, the brother's girlfriend (Miranda), and appellant. Before the party Diana smoked marijuana, and at the party she drank alcohol. She left the party around 1:00 a.m., and returned home feeling "drunk and a little high." She and Veronica went to Veronica's room where Diana fell asleep, still wearing the underwear and dress she had worn to the party.

Diana awoke around 7:00 a.m. with a pillow pressed to her face. The pillow was being held "forcefully on [her] face," and she was unable to move it. There was a heavy weight on the pillow, and she felt like she was suffocating. Diana did not know what

---

[1] Undesignated statutory references are to the Penal Code.

was happening until she felt someone touching her inner thighs and holding her legs open with his knees. She felt the man's penis inside her vagina, and realized she was being raped. It felt dry and forced and painful. When Diana tried to remove the pillow from her face, the assailant grabbed her hands by the wrist. Diana began to panic. Using all of her strength, Diana managed to push the pillow away and saw appellant on top of her. He was wearing a white shirt and was naked from the waist down. Diana then kicked appellant off of her, picked up her underwear from the floor, and left the room.

Outside the room Diana ran into Veronica and told her that appellant had raped her. Veronica and Miranda drove Diana to the hospital where she spoke to the police. She told them appellant had raped her and that he had penetrated her twice.[2]

A few hours after the police interview, Diana was interviewed and underwent a sexual assault examination by a registered nurse/forensic nurse examiner. Diana told the nurse that appellant had penetrated her twice. Appellant's DNA was found on Diana's right and left thighs, her super pubic region, and perianal region, and his spermatozoa was found on the dress Diana was wearing when he raped her.

---

[2] Portions of the police body camera video of this interview were played for the jury. At trial, Diana recalled telling the police appellant had penetrated her twice, but testified that she could not remember two penetrations and remembered that appellant's penis was fully inserted and then withdrawn from her vagina.

## DISCUSSION

**The Trial Court Did Not Err in Imposing Concurrent Sentences on Counts 1 and 2 Rather Than Staying the Sentence on Count 2 Under Section 654**

### A. *Relevant proceedings*

In his sentencing memorandum, appellant asserted the punishment on count 1 or 2 must be stayed under section 654, making his maximum exposure six years in state prison. At the sentencing hearing, the trial court disagreed, stating that appellant's maximum possible sentence was 12 years, because he could be sentenced to consecutive six-year terms on counts 1 and 2. Citing *People v. Harrison* (1989) 48 Cal.3d 321 (*Harrison*), the trial court explained that section 654 does not apply where multiple sex offenses are committed against a single victim in quick succession, as was the case here.

Appellant argued that *People v. White* (2017) 2 Cal.5th 349 (*White*) was more relevant because it presented "virtually the identical [factual] situation" as the instant case. In that case, our Supreme Court held that defendant could be convicted of rape of an intoxicated person (§ 261, subd. (a)(3)) and rape of an unconscious person (§ 261, subd. (a)(4)(A)) based on the same act, but could not be punished for both offenses. (*Id.* at pp. 351–352.) The trial court distinguished *White* on the ground that the defendant in that case was convicted of two distinct rape charges based on the same act, whereas here, "[appellant] raped [the victim] while she was unconscious, and then the penis was withdrawn, [and] reinserted by force. So there were at least two acts of rape in our case."

Appellant responded that a separate count was not alleged for each act and the testimony showed only one act of

4

penetration.  The court disagreed, stating that the testimony concerning the victim's prior statements established "there were at least two insertions."  Appellant replied, "[B]ut there was not a separate act of penetration alleged.  There [were] two counts of rape of unconscious, and rape by force or fear.  There was not a separate act alleged [in the information].  It was not amended to add a separate count of penetration.  There was only one count of penetration."  Again, the trial court disagreed:  "No, read the information.  The information said two counts.  The jury instructions said two count[s].  The court instructed that each count is a separate crime.  The testimony was that there were at least two insertions.  So they found him guilty based upon at least two insertions, and under *Harrison*, those are two crimes for which 654 does not apply."

**B. *Applicable law***

Section 654 provides:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  The purpose of section 654 is to ensure that the punishment for a defendant's criminal behavior is commensurate with his culpability.  (*Harrison, supra,* 48 Cal.3d at p. 335; *People v. Patton* (2024) 101 Cal.App.5th 922, 930.)  Our Supreme Court has explained that "[w]hether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective.  [Citations.]  We first consider if the different crimes were completed by a 'single physical act.'  [Citation.]  If so, the

5

defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single ' "intent and objective" ' or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).)

"Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses." (*Corpening, supra,* 2 Cal.5th at p. 313.) And where a case involves a course of conduct, "if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, [a] defendant may be found to have harbored a single intent and therefore may be punished only once." (*Harrison, supra*, 48 Cal.3d at p. 335.) But if the defendant "harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*)

Even when the defendant has a single overall objective, however, a finding of multiple independent objectives may be supported by a showing that the defendant engaged in consecutive acts which reflect a decision to continue the course of criminal conduct notwithstanding an opportunity to reflect and stop the behavior. (*Harrison, supra*, 48 Cal.3d at p. 338 [defendant properly punished for multiple digital penetrations where, "instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his sexually

6

assaultive behavior"]; *People v. Brown* (1994) 28 Cal.App.4th 591, 601 (*Brown*) [defendant punished for multiple reinsertions of penis under circumstances showing that "[e]ach time [the victim] struggled and defendant's penis came out, he could have chosen to stop his attack"]; see also *People v. Latimer* (1993) 5 Cal.4th 1203, 1211–1212.)

In the context of sex crimes, the courts have recognized that although a defendant may have the single overall objective of sexual gratification, section 654 generally does not bar multiple punishment for multiple statutory violations if the circumstances show "separate base criminal acts" upon the victim. (*Harrison, supra*, 48 Cal.3d at pp. 325 ["section 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification], 337–338 ["it is defendant's intent to commit a number of separate base criminal acts upon his victim, and not the precise code section under which he is thereafter convicted, which renders section 654 inapplicable"]; *Brown, supra*, 28 Cal.App.4th at p. 601.) Indeed, where multiple sex acts committed on a single occasion result in multiple statutory violations the "offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed." (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6; see also *People v. Hicks* (1993) 6 Cal.4th 784, 788, fn. 4 ["We previously have held that this statute does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time' "]; *Harrison, supra*, 48 Cal.3d at pp. 335–338; see *People v. Perez* (1979) 23 Cal.3d 545, 552–554 [intent and

7

objective to achieve sexual gratification "is much too broad and amorphous to determine the applicability of section 654"].)

The determination of "[w]hether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; *People v. Carter* (2019) 34 Cal.App.5th 831, 844 (*Carter*).) "We review any factual findings underlying the trial court's ruling for substantial evidence" (*People v. Washington* (2021) 61 Cal.App.5th 776, 795), considering "the trial court's determination in the light most favorable to the [People] and presum[ing] the existence of every fact the trial court could reasonably deduce from the evidence" (*Jones, supra*, at p. 1143). If supported by substantial evidence, we must uphold the trial court's determination that two crimes were separate and not subject to section 654. (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

**C.** ***The trial court properly imposed separate sentences on counts 1 and 2 rather than staying the sentence on count 2 under section 654***

The trial court imposed concurrent sentences on counts 1 and 2, concluding that section 654 did not apply because there were two separate acts of penetration. Appellant concedes that substantial evidence would support a finding that two penetrations occurred, but argues that the trial court actually made no such finding. Rather, appellant asserts that the trial court mistakenly believed—based on the information, prosecution's argument, and the jury instructions—that the *jury* had necessarily made the factual finding that two penetrations had occurred. According to appellant, the information contained no allegation of separate acts of penetration, and the jury was not

8

required to determine whether there were separate acts of penetration.  Appellant thus concludes that in the absence of any such factual finding by the jury, the trial court erred by failing to make its own finding, and its determination that section 654 did not apply to this case is unsupported by any factual finding.  We disagree.

We reject appellant's contention that the trial court did not make an independent factual finding that there were two penetrations, but instead relied on its mistaken belief that the jury necessarily found two penetrations to conclude that section 654 did not apply.  In distinguishing the *White* case, the court plainly stated its view that two separate acts of penetration were established by the evidence.  On the basis of this express finding, the trial court ruled that section 654 did not prohibit concurrent sentencing on counts 1 and 2.  Although the jury was not required to make an affirmative factual finding concerning the number of penetrations, there was no language in the charging document or verdict forms to preclude it from doing so.  And the trial court's view that the jury had found appellant guilty based on an implied finding that there were "at least two insertions" did not prevent the court from making the same express finding based on the evidence in the exercise of its sentencing discretion. (See *Carter, supra,* 34 Cal.App.5th at pp. 842–844 [trial court may rely on *any* of the facts in evidence at trial to make its decision under § 654 as long as it does not make factual findings that conflict with express findings by the jury].)

In short, nothing in the record supports appellant's contention that the trial court failed to make its own determination under section 654 based on the evidence presented at trial.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

10