Filed 7/22/25  P. v. Munoz CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>EDDIE MUNOZ,<br><br>        Defendant and Appellant. | D083658<br><br><br>(Super. Ct. No. SCE419656) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

Eddie Munoz was convicted on ten counts stemming from two separate domestic violence incidents involving his girlfriend Marcella R.  As relevant here, a jury convicted him of assault by means likely to produce great bodily

injury (Pen. Code, § 245, subd. (a)(4); count 4); false imprisonment by violence, menace, fraud, or deceit (§§ 236, 237(a); count 5); and making a criminal threat (§ 422; count 6). The trial court sentenced Munoz to an aggregate prison term of 22 years and eight months, plus 25 years to life. When doing so, the court declined to dismiss Munoz's prior strikes. It also ordered the sentence on count 6 to run concurrently with count 5, and the sentence on count 4 to run consecutively.

Munoz challenges his sentence on two grounds. First, he argues the trial court abused its discretion in denying his motion to strike a prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. Second, Munoz argues the trial court erred by failing to stay the sentences on counts 4, 5, and/or 6 pursuant to Penal Code section 654. We resolve this case by memorandum opinion and affirm. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851–854.)

I.

Munoz claims the trial court abused its discretion in denying his *Romero* motion to strike a prior strike. We conclude otherwise.

"[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, 13 Cal.4th at p. 528.) Trial courts have discretion to dismiss "strike" prior convictions in limited cases where the dismissal is "in furtherance of justice." (*Id.* at p. 530; § 1385.) The court determines "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) A recidivist falls outside the spirit of the law

2

"only in extraordinary circumstances." (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786.)  An unrelenting record of recidivism compels the conclusion that a defendant falls within the spirit of the sentencing scheme. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320.)

We review a trial court's refusal to strike a prior conviction allegation for abuse of discretion.  (*Williams,* 17 Cal.4th at p. 162.)  Absent a showing that the court acted arbitrarily or irrationally, we presume the court "acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.)  We do not reweigh evidence; nor do we substitute our judgment for that of the trial court. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Munoz claims he falls outside the spirit of the Three Strikes law because: (1) his prior strikes were remote in time; (2) his girlfriend Marcella provoked his current offenses, and they were not egregious; (3) his depression and substance abuse influenced his behavior; and (4) his parents' domestic violence caused childhood trauma.  We discern no abuse of discretion.

First, as to the strikes' purported remoteness, Munoz's argument downplays the significance of his interim incarceration between his last strike conviction and the current offenses.  Although Munoz's strikes date from 2010 and 2013—10 to 13 years before the charged offenses—he served a state prison sentence between 2013 and 2022.  He was released from prison about a year before committing the current offenses.  He suggests he could have but did not commit any new crimes while in prison.  Yet Munoz's probation report indicates he admitted daily heroin use while incarcerated. Munoz also does not explain his pattern of reoffending soon after his release from custody.  (See *People v. Humphrey* (1997) 58 Cal.App.4th 809, 812–813.)

Second, Munoz claims the current offenses were not egregious because (1) he initially damaged only Marcella's car, (2) never discharged the gun he pointed at her, (3) did not cause any lasting injuries, and (4) Marcella provoked the incident by refusing to return his phone and by contacting another woman he had been dating. In denying Munoz's *Romero* motion, the trial court considered "the facts of the present case" and "all the information provided by both parties and probation." Absent a showing on the record that the trial court failed to expressly consider the nature of the offenses, Munoz's argument amounts to a claim the court did not give enough weight to the nature and circumstances of his convictions. In doing so, he asks us to reweigh the evidence, which is impermissible on review for abuse of discretion. (*Carmony*, 33 Cal.4th at p. 377.)

In his final two arguments regarding his *Romero* motion, Munoz asserts the court failed to appropriately consider the particulars of his background, namely his alcohol and drug abuse, depression, and childhood trauma. The record does not support the factors Munoz cites in mitigation. Munoz's claim of depression rests not on a medical diagnosis, but on his defense counsel's opinion that he "very likely" suffers from depression. Regarding his traumatic childhood, the record contains references to his father's alcohol abuse, gang membership, and violence toward Munoz's mother, but, at sentencing, Munoz stated his family did not "fail[ ]" him—he simply "made bad mistakes." Lastly, as to his history of substance abuse, Munoz has maintained that he needs drug rehabilitation, did not receive those services in prison, and wants help. Yet rather than showing he participated in rehabilitation programs while out of custody, he has exhibited a consistent pattern of drug use both inside and outside of prison. Regardless, the trial court considered Munoz's "personal" and "family" history

4

and still found he fell within the spirit of the Three Strikes law.  Ultimately, Munoz again asks us to reweigh the evidence, which we cannot do. (*Carmony*, 33 Cal.4th at p. 377.)

Having weighed all considerations, the trial court ruled the imposition of the Three Strikes law was just and warranted.  On this record, we cannot conclude the court's ruling was arbitrary or irrational.  (*Du*, 5 Cal.App.4th at p. 831.)

II.

Munoz also contends the trial court erred by failing to stay the sentences for counts 4, 5, and/or 6 under section 654, arguing these counts resulted from an indivisible course of conduct with a single objective.  We disagree.

Section 654(a) "prohibits punishment for two offenses arising from the same act or from a series of acts constituting an indivisible course of conduct."  (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.)  Whether a course of criminal conduct is indivisible depends on the defendant's intent and objective.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  If a defendant's criminal objectives were independent of each other, he may be punished separately for each statutory violation, "'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*Ibid.*)  In addition, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment."  (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)  If enough time elapses after the commission of one crime to allow the defendant to reflect and to renew his intent before commission of another crime, section 654 does not prohibit separate punishment.  (*People v. Trotter* (1992) 7 Cal.App.4th 363, 367–368.)

When, as here, no reference is made to section 654 at the sentencing hearing, the trial court's imposition of separate prison terms is deemed an implied finding that each crime had a separate intent or objective. (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) We must uphold the implied finding if substantial evidence supports it. (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

First, we review the record to determine if substantial evidence supports the trial court's implied finding that Munoz harbored multiple criminal objectives. For false imprisonment, Munoz had to intentionally restrain, confine, or detain Marcella, and cause her to stay or go somewhere against her will. (§§ 236, 237(a); CALCRIM No. 1240.) For the assault charge, Munoz had to willfully commit an act that would result in the application of force likely to produce great bodily injury. (§ 245; CALCRIM No. 875.) For criminal threats, Munoz had to willfully make a verbal threat, which caused Marcella to be in reasonable and sustained fear for her own safety. (§ 422; CALCRIM No. 1300.)

The record supports a finding that Munoz committed these acts, which require separate and distinct elements, with multiple objectives. Specifically, the record supports a finding Munoz pulled Marcella into the bedroom and restrained her to prevent her from ending the argument. It supports a finding he strangled Marcella to inflict pain and injury on her, and to punish her for escaping his initial grasp. Lastly, the record supports a finding Munoz threatened Marcella to keep her in sustained fear so she would not follow through on her attempts to call the police and would not challenge him in the future.

Second, even if Munoz committed the three crimes with a single generalized intent or objective (i.e., to attack Marcella), separate punishment

6

is still appropriate because the crimes were divisible by time. Here, the prosecution based the false imprisonment charge on Munoz's acts of grabbing Marcella by the hair, pulling her into the bedroom, and throwing her on the bed. The prosecution premised the assault charge on either of Munoz's two acts of strangulation, one immediately after he pulled Marcella back into the bedroom, and one a short time later. As to the criminal threat charge, the prosecution relied on Munoz's statements that he would kill Marcella and she would never see her kids again, threats he made during the first strangulation and after the second strangulation.

Even if Munoz might have committed the first strangulation during a course of conduct indivisible from the false imprisonment, he strangled Marcella a second time after she broke free from his grasp, and he positioned her back on the bed. Sufficient time elapsed between the false imprisonment and the second strangulation for Munoz to reflect on his actions before committing the assault. Similarly, even assuming Munoz's first threat was indivisible from the false imprisonment and first strangulation, sufficient time elapsed between the second threat and the other acts underlying the false imprisonment and assault charges for him to have reflected on his actions. (See *Harrison*, 48 Cal.3d at pp. 325–326, 338 [three identical acts of sexual penetration accomplished over course of 7 to 10 minutes separately punishable where they were interrupted by periods of struggle].) All of Munoz's acts "were volitional and calculated, and were separated by periods of time during which reflection was possible." (*Trotter*, 7 Cal.App.4th at p. 368.)

We find the record contains substantial evidence to support the trial court's implied finding section 654 does not bar separate sentences for counts 4, 5, and 6.

### III.

We affirm.

CASTILLO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.