[No. G001663. Fourth Dist., Div. Three. Aug. 29, 1984.]

BRENT LOUIS VANGSNESS, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, James Dean Allen and Richard Schwartzberg, Deputy Public Defenders, and John D. Barnett for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Jan J. Nolan, Deputy District Attorneys, for Real Party in Interest.

Proctor & McNerney and Dennis M. McNerney for Frank Davern.

**OPINION**

**CROSBY, J.**—Brent L. Vangsness is awaiting trial for murder (Pen. Code, § 187). The superior court recused his former counsel, the public defender;

and he petitions along with his new counsel and the public defender for relief from the court's action.

## I

The district attorney intends to call Frank Davern as a witness against Vangsness. Davern is expected to describe a previous knife attack by Vangsness against the murder victim when the three were in Hawaii together in October 1983. The superior court has made a preliminary ruling—not challenged here—that this testimony will be admitted.

The public defender's office represented Davern in an automobile theft case in 1981, which apparently resulted in a plea to a violation of Vehicle Code section 10851, charged as a misdemeanor. In 1984 the public defender was appointed to represent Davern in an assault and battery case and a "checks charge," also misdemeanors.

Before the public defender declared conflicts in his new cases, Davern had one discussion with a deputy assigned to the municipal court. There is absolutely no claim the conversation had anything to do with this case or touched on confidential matters of any kind, related or unrelated. At the suggestion of a different deputy who is assigned to represent Vangsness, the superior court appointed an attorney to counsel Davern concerning any potential conflict. Davern's files were provided to that attorney.

Vangsness agreed to waive any conflict, insisted he wanted to continue with his assigned deputy public defender, and declined to waive his right to a speedy trial. Davern's court-appointed attorney said Davern would not waive "any conflict of interest that *might* arise," however. (Italics added.) Neither Davern's counsel nor the deputy public defender ever represented there *was* a present conflict or that one was expected; and in a letter brief submitted to us the former flatly states that he has discovered no actual conflict of interest, but perceives an "appearance of a conflict of interest" should the public defender continue with this case. He adds Davern objects to being cross-examined by his former attorney.

The deputy public defender stated he did not intend to use any information his office acquired in its previous relationship with the witness; did not believe it could be relevant or even admissible since only misdemeanors were involved; and, in any event, had ample evidence from independent sources to refute Davern's prospective testimony. He concluded he would not remove himself without a court order. He got it.

The court held, "The end result is that that evidence then being probably offered by the people, that leaves the case in a posture where if . . . the

public defender remain[s] on the case the case will ultimately end up having to be tried twice. [¶] If there's no conviction, there's a win. If there is a conviction, there's a win for the reason that the defense ends up with a retrial. And I'm certain that Mr. Holmes, a professional and honorable member of the profession, is not desirous of creating such a situation, and never would that be an accusation by the court in regard to this individual for the reason I've known him to be a highly professional individual for the 15 years we've known one another. [¶] The end result is that the court's observation is there is a glaring conflict for which the attorney presently representing Mr. Vangsness should not serve as counsel. And it's the court's inclination to so find and order the public defender to declare a conflict, in effect."

## II

 Of course, an attorney may not use confidential information obtained from a former client against him. (*Galbraith* v. *The State Bar* (1933) 218 Cal. 329, 333 [23 P.2d 291]; *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564, 573-574 [15 P.2d 505]; Bus. & Prof. Code, § 6068, subd. (e); Rules Prof. Conduct, rules 4-101 and 5-102.) Also, where a substantial previous relationship is involved, especially where relevant confidential information might have been imparted, a "rule of necessity" causes a presumption of a conflict. (*Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609].) This presumption includes the potential, as well as actual, use of confidential information. (*Woods* v. *Superior Court* (1983) 149 Cal.App.3d 931, 935 [197 Cal.Rptr. 185].)

 But here no one has ever suggested the public defender's office possesses *any* confidential information, relevant or otherwise, much less that the deputy public defender is untruthful when he states he has no intention of using anything his office has learned about the witness in the course of its brief representation of him: not Davern, not his appointed lawyer, not the prosecutor. Also, this record does not display the *Global Van Lines* variety of conflict which is implied from the nature of the former representation. As the trial court noted, the previous relationship was minimal and dealt with matters unrelated to and inadmissible in the current proceeding. Thus, we see no basis to presume the deputy public defender possesses "relevant confidential information" obtained from Davern in the face of his staunch denial.[1]

 An attorney has a duty and a right to withdraw if his representation will violate his professional responsibility. (*Gendron* v. *State Bar* (1983) 35

---

[1]We see no reason not to credit the deputy public defender's representations. His office does not suffer from a lack of business.

Cal.3d 409, 424 [197 Cal.Rptr. 590, 673 P.2d 260]; *Leversen* v. *Superior Court* (1983) 34 Cal.3d 530, 538 [194 Cal.Rptr. 448, 668 P.2d 755]; Rules Prof. Conduct, rule 2-111(B)(2).) ■■■ But while it is true the former client may enforce this duty in an appropriate case "even at the expense of depriving the defendant of his choice of counsel" (*Leversen* v. *Superior Court, supra,* at p. 538; *Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669 [153 Cal.Rptr. 295]), there is not the slightest suggestion here that the deputy public defender proposes to violate his professional obligations. On the other hand, we are less than comfortable with a *prosecution* witness forcing the recusal of an attorney on such a minimal showing and over the defendant's objection, simply because he does not want to be cross-examined by a different deputy from an office which once represented him. The public paid for Davern's previous encounters with the law; it need not suffer him to add to the bill in a case where he is merely a witness and not a party. His function is only to tell the truth on the stand, whomever the cross-examiner happens to be.

The trial court's fear Vangsness would somehow be entitled to a reversal if the public defender continues to provide his representation is completely spurious.[2] Vangsness has waived all conflicts in order to continue with the deputy public defender assigned to him. He will not be heard to complain on this basis in the future. On the other hand, were we to deny the petition, we would be faced with a Sixth Amendment claim on appeal that might well result in a reversal. (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333]; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65].) Moreover, Vangsness cannot be prejudiced. He can only potentially benefit from an actual conflict—if any there is.[3]

The prosecution has belatedly and ill-advisedly joined Davern's counsel in defense of the trial court's ruling, arguing the public defender probably does possess confidential information or Davern would not be objecting. If Davern has such a claim, he has yet to make it despite every opportunity to do so; we reject the suggestion as pure speculation. The prosecution also claims a conviction might somehow be jeopardized were an actual conflict to finally appear. This contention, as we explained above, is similarly meritless. Ironically, the one course likely to lead to reversal is that advocated by the district attorney. In matters involving sensitive questions of selection

---

[2]Vangsness was also arguably entitled to advice of independent counsel concerning the conflict. (See *Gendron* v. *State Bar, supra,* 35 Cal.3d at p. 424.) For reasons which follow and also because he now has independent counsel by virtue of the court's ruling—who apparently supports his waiver of any possible conflict—we need not consider the point.

[3]Unless, of course, the deputy public defender were to pull his punches with former client Davern, but the record shows this is simply not going to happen.

of counsel for indigent defendants, especially where a prosecution witness has staked out a position at odds with the defendant, the district attorney has little to gain and much to lose in allowing himself to become involved in the matter.

Issuance of an alternative writ could add nothing to our review of the matter and would further delay Vangsness' trial. A peremptory writ in the first instance is appropriate. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].) Let a peremptory writ of mandate issue commanding the superior court to vacate its former ruling and reinstate the appointment of the public defender to represent petitioner.

Wallin, Acting P. J., and Sonenshine, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied October 3, 1984.