[No. G000637. Fourth Dist., Div. Three. June 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DARIN DENNIS PHILLIPS, Defendant and Appellant.

634

**COUNSEL**

Richard J. Sunday, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, A. Wells Petersen, Keith I. Motley and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TROTTER, P. J.**—Darin Dennis Phillips appeals from his convictions of forcible rape and child molestation (Pen. Code, §§ 261, subd. (2) and 288, subd. (b)). He contends (1) he was denied the effective assistance of counsel when the court "recused" his deputy public defender and replaced her with a different court-appointed attorney; (2) the district attorney's office should have been recused; (3) his statutory speedy trial rights were violated; (4) enhancement allegations should have been set aside before trial; and (5)

consecutive sentences were improperly imposed. While we find the trial judge erred and the trial attorneys displayed a distressing breach of professionalism, we affirm the judgment.

Ten-year-old Amy already knew Phillips on October 29, 1981, when she agreed to join him for a Coke at a nearby sandwich shop. Phillips refused to let her playmate go with them. Walking back, Phillips forced Amy into an enclosed trash area. He molested her by sticking his finger in her vagina, ignoring her protests of pain. After about five minutes of this, Amy was allowed to urinate in the corner of the enclosure. Phillips then tried to insert his penis in her vagina and eventually succeeded, leaving Amy bleeding, but proclaiming she was "a young lady now."

The doctor who examined Amy discovered a significant vaginal tear, similar to that caused by childbirth. Phillips admitted sticking his finger in her vagina, but denied the act of intercourse. Vaginal smears reflected the presence of spermatozoa, contradicting Phillips' denial of the rape.

A series of highly unusual and at best ill-advised actions occurred. During the course of the jury trial, albeit on a weekend, the court-appointed deputy public defender representing Phillips traveled to Canada to be with her boyfriend who was undergoing medical treatment. Concerned about her boyfriend's condition, she remained in Canada at the conclusion of the weekend, despite Phillips' ongoing jury trial. The resultant delay led to the attorney's citation for contempt, which was eventually dissolved. Nevertheless, Phillips sought and was granted a mistrial based on his concern the waiting jurors had become hostile to him and his attorney.

A local radio personality developed an interest in the case and broadcast a series of live phone-in programs discussing the issue of the deputy public defender's "abandonment" of her client. Tremendous attention focused upon the trauma to young Amy, who was anxious to lay the incident to rest but was now forced to await a new trial setting after the mistrial. To further complicate an already bizarre situation the trial participants themselves got involved in the radio broadcasts; on the air, the host spoke with the trial judge, the prosecutor and the deputy public defender's attorney (on the contempt issue), as well as innumerable concerned citizens.

Phillips then became concerned with his attorney's continued representation in light of the publicity her nonappearance engendered and requested the court provide him with a different attorney for consultation. The deputy public defender articulated the motion: "Your honor, on behalf of Mr. Phillips, I would request of the court the appointment of a private attorney to examine the issue of conflict of interest and advise Mr. Phillips regarding

same." Phillips himself stated: "I want to be counseled properly so I know what is best for me to do. I just don't know." The court found the request for the appointment of private counsel for consultation inappropriate. Instead, in an apparent fit of pique, the court stated "recusal" of the public defender's office was required, "in light of the abandonment of the client during the course of his trial and the whiplashes that he's had of different types of advisement from other members in the public defender's office, . . ."

Phillips' public defender took issue with the court's order, stating there was insufficient evidence requiring recusal. The trial court responded by attempting to set forth the reasons for his decision, reminding counsel it was the client who was questioning her continued representation and he, the trial judge, was the same judge who had granted the mistrial occasioned by her conduct. Phillips himself said little except to reply "I don't know. I'm not sure" when the court asked whether he preferred a man or woman as his new attorney.

Private counsel was then appointed to represent Phillips after the public defender's office was "recused." The newly appointed attorney brought several motions before trial, including a motion to dismiss grounded on an allegation Phillips was denied his statutory speedy trial rights. The crux of that motion was Phillips' claim his prior counsel's nonappearance forced him to seek a mistrial, which in turn delayed the case in violation of his right to a speedy trial. Phillips also sought recusal of the county district attorney's office based on several deputies' active participation in the radio broadcasts involving Phillips' case. In addition, Phillips requested a change of venue because of the extensive pretrial publicity. All of these motions were denied and a second jury trial eventually ensued, more than three months after the first trial terminated. The evidence of Phillips' guilt was overwhelming.

The trial court rejected Phillips' request for treatment as a mentally disordered sex offender. He was sentenced to two consecutive prison terms totalling 11 years, the court having concluded the offenses were separate acts subject to separate punishment.

I

■    The sanctity of the attorney-client relationship precludes the trial court from unilaterally removing a criminal defendant's attorney in the guise of protecting the right to a fair trial. Thus, in *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65], our Supreme Court held it was beyond the inherent power of the trial court to discharge the defendant's

court-appointed counsel based on the judge's subjective belief that the attorney was incompetent. More recently, in *Maxwell v. Superior Court* (1982) 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], the court held the mere possibility of a conflict of interest similarly does not warrant removal of retained counsel over the defendant's objection.

Here, the trial court refused Phillips' request to consult with independent counsel regarding a potential conflict, but reacted by recusing his attorney without a request she be relieved. Our observation of the record leads us to conclude the court's action was premature. However, the unique circumstances of this case distinguish it from *Maxwell* and *Smith* and require we affirm the judgment despite the apparent error in removing counsel.

After counsel's nonappearance during trial, Phillips expressed concern with its effect on the jurors who had to wait for her return. He requested and was granted a mistrial. He remained concerned with the vestiges of hostility directed towards himself and his attorney. While his attorney labeled these concerns a potential conflict of interest, they more properly involved a tactical decision Phillips had to make: Should he fear the potentiality of animosity towards his attorney, from the court, the prosecutor and a new jury who might or might not learn of the reason for the earlier mistrial? Or should he ignore that potentiality since his attorney had prepared the case for trial and was therefore presumably the most familiar with his defense?[1]

This unique scenario is notably distinct from *Smith* and *Maxwell*, where the court condemned trial courts' *sua sponte* actions based on subjective beliefs, over the unequivocal objections of the defendants themselves. Phillips' attorney initiated her own removal and Phillips did not know what he wanted to do. It is clear he was dissatisfied with attempting to resolve the dilemma by consulting with the attorney who created the problem. It is not as clear he was entitled to independent counsel to assist him in making the best decision.[2]

The situation is analogous to a defendant seeking removal of court-appointed counsel based upon personal dissatisfaction with how the attorney is handling the case. *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr.

---

[1]We note the lack of a record articulating any specific reasons for wanting to retain the deputy public defender who caused the mistrial. However, that void is explained by Phillips' equivocation on continuing with her as counsel. We also note, however, that Phillips had a different deputy public defender representing him at the preliminary examination.

[2]While appointing separate counsel for consultation only would certainly have been an efficient choice, we are not asked whether Phillips was entitled to a second court-appointed attorney as a matter of right. (See *Vangsness v. Superior Court* (1984) 159 Cal.App.3d 1087, 1091, fn. 2 [206 Cal.Rptr. 45].)

156, 465 P.2d 44] requires the court allow the defendant an opportunity to articulate the basis for his or her dissatisfaction. The requirement of a full hearing in turn provides a record for meaningful review on appeal. ■

Yet the failure of a defendant to specify grounds supporting the request for new counsel justifies denial of the substitution motion. (*People* v. *Culton* (1979) 92 Cal.App.3d 113 [154 Cal.Rptr. 672].) Phillips' request for "consultation" counsel properly invited a *Marsden*-type hearing, since there was no claim the so-called conflict involved any confidences. Further inquiry may well have led the court to conclude that Phillips could not waive the "conflict" or would have been irreparably damaged had he continued with the public defender. *Maxwell* acknowledges situations where the trial court is justified in removing counsel over the defendant's objection. (See *Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 620, fn. 12.) Yet the court's actions here, in replacing counsel without inquiring further, were premature and preclude meaningful review.

■    Nevertheless, substitution of counsel under these circumstances does not necessarily require reversal. Phillips mistakenly phrases the question as involving his constitutional right to the effective assistance of counsel. If we limited our discussion to Phillips' briefs there would be no question he has failed to demonstrate any denial of the effective assistance of counsel. (See *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) In fact, he does not even claim his second court-appointed attorney was inadequate in any way. Yet his mischaracterization of the issue does not preclude us from recognizing his complaint that the court erred. Even so, the error does not require reversal.

Phillips' acquiescence in the error, coupled with this court's inability to "right the wrong," requires we affirm the judgment in spite of the court's error in prematurely recusing counsel. First, we note Phillips' lack of *any* objection to the deputy public defender's removal. The court inquired directly whether he wanted to continue with the same attorney; he did not know. More importantly, there was ample opportunity, after counsel was removed, to seek reinstatement. Trial was not begun for another three months. The absence of such a request is particularly significant since Phillips got exactly what he wanted, and then some. He got a new attorney who also was an independent attorney fully able to discuss whether he should request reinstatement of the deputy public defender. At the least, Phillips could have expressed some displeasure with the new attorney, if he was sincere in wanting the representation of the deputy public defender.

We are led to the inevitable observation that Phillips is still uncertain whether he wanted to be represented by the deputy public defender. In fact,

he has not asked for that relief on appeal. Nor could we order that specific deputy to represent him on any retrial. The lack of an adequate remedy on appeal is one of the features of this case which distinguishes it from other types of asserted "counsel" error. *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] granted criminal defendants the right of self-representation. The erroneous denial of that right is reversible error per se. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 948 [196 Cal.Rptr. 339, 671 P.2d 843]; see also *McKaskle* v. *Wiggins* (1984) 465 U.S. 168, [79 L.Ed.2d 122, 133, 104 S.Ct. 944, 951.) There, however, the appellate courts can reverse and remand for retrial where the defendant can have what he was erroneously denied: self-representation. Similarly, the remedies for *Marsden* error include a new trial without the attorney defendant complained of, or, at least a remand for a hearing to determine whether the court should have relieved counsel. (See, e.g., *People* v. *Maese* (1985) 168 Cal.App.3d 803 [214 Cal.Rptr. 365].) None of those options are available here.

Moreover, we note Phillips' failure to pursue timely procedural avenues which could have provided a remedy. Specifically, Phillips did not seek to correct the court's error by petitioning for an extraordinary writ before trial. (See, e.g., *Vangsness* v. *Superior Court, supra,* 159 Cal.App.3d 1087.) The defendants in *Smith* and *Maxwell* did seek such pretrial relief. (See also *Harris* v. *Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750]; *Magee* v. *Superior Court* (1973) 8 Cal.3d 949 [106 Cal.Rptr. 647, 506 P.2d 1023]; *Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669 [153 Cal.Rptr. 295]; *Mandell* v. *Superior Court* (1977) 67 Cal.App.3d 1 [136 Cal.Rptr. 354].) Additionally, our Supreme Court has intimated the issue may not be cognizable on appeal in the absence of a showing of prejudice. (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].)

Finally, Phillips used the court's error to his advantage. His new attorney sought dismissal, in part based upon the conduct of the deputy public defender "abandoning" Phillips midtrial. We cannot condone the concept of giving him a "free" trial under these circumstances. As our Supreme Court explained, in the context of discussing the purpose of requiring criminal defendants to properly object to preserve appellate review: To hold otherwise "would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal. . . .'" (*People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048], quoting from *Coy* v. *Superior Court* (1959) 51 Cal.2d 471, 473 [334 P.2d 569].) Phillips' acquiescence in the substitution of counsel would similarly afford him a free trial, secure in his belief the error required

reversal, were we to hold the error was prejudicial per se on appeal. We refuse to adopt such an illogical result.

Our conclusion is not novel. The court reached the same conclusion in *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401]. Chavez had court-appointed counsel at his preliminary examination in municipal court. At his arraignment in superior court, he requested the court reappoint the same attorney that had been representing him throughout the proceedings. The Supreme Court found the trial court erred in appointing a new and different attorney despite Chavez' request. Nevertheless, the court found the error was not prejudicial and rejected the argument the error was per se reversible.

A similar result was reached in *People* v. *Ward* (1972) 27 Cal.App.3d 218 [103 Cal.Rptr. 671]. Ward's first trial ended in a mistrial. Although he had been represented by a deputy public defender he hired private counsel for the retrial. On the day set for commencement of the second trial, newly retained counsel announced he was engaged in trial and would not be available to try Ward's case until he finished the other trial. He did make it clear, however, that he was otherwise ready for trial. The prosecution protested against a continuance because a material witness was being held in custody. The court "solved" the dilemma by relieving private counsel and reappointing the deputy public defender who had previously represented Ward. Ward was convicted of first degree murder. On appeal, the court found substituting attorneys without Ward's consent was error, but concluded the error did not result in a deprivation of his constitutional right to counsel. (*Id.*, at p. 234.) The court also stated the error could be waived and specifically found there was no prejudice evident on appeal. The same logic applies to the peculiar facts of this case.

We are mindful of the danger of oversimplifying the issue. It appears the trial court interfered with the attorney-client relationship in recusing and replacing counsel without substantial cause. Even so, there was ample opportunity to correct the error if Phillips indeed objected to the substitution. He not only failed to object, but used the prior attorney's alleged malfeasance in an attempt to gain a dismissal of all charges. He was more than adequately represented at trial, the evidence was overwhelming, and he does not claim, let alone prove, any damage resulting from the change of attorneys. Under these circumstances, we conclude the trial court's error does not warrant reversal of Phillips' convictions.

## II

The record on appeal has been augmented to include transcripts of the radio broadcasts which discussed Phillips' case after his public defender

absented herself during trial. After that attorney was recused, Phillips' new attorney sought recusal of the county district attorney's office. It was contended the deputy district attorney who prosecuted Phillips' case exhibited biases and prejudices while being interviewed on the live radio show which demonstrated a conflict precluding a fair prosecution.

*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255 [137 Cal.Rptr. 476, 561 P.2d 1164] established the power of the trial court to disqualify a prosecutor whose participation at trial would be manifestly improper. Such a recusal protects the defendant from a prosecutor who suffers a conflict of interest which may prejudice him against the defendant. The doctrine of prosecutorial recusal insures the prosecution performs the discretionary functions of the office impartially. (*Id.,* at pp. 266-267.)

The Legislature enacted a statutory procedure for a motion to recuse the prosecutor subsequent to the court's decision in *Greer.* (Pen. Code, § 1424.) The code provides "[t]he motion shall not be granted unless it is shown by the evidence that a conflict of interest exists such as would render it unlikely that the defendant would receive a fair trial." ■ Subsequently, the court defined "conflict of interest" in *People* v. *Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5]: "In our view a 'conflict,' within the meaning of section 1424, exists whenever the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." On appeal, the trial court's determination on the "conflict" allegation is reviewed to determine whether it is supported by substantial evidence. (*Id.,* at p. 149.)

■ Substantial evidence supports the trial court's refusal to recuse the prosecutor in Phillips' case. While the deputy district attorney's participation in the radio talk show was certainly ill advised, the transcripts show he cautiously avoided references to the merits of Phillips' case and his expressed concern for Amy was within the realm of proper prosecutorial functions. We agree with the trial court's assessment that Phillips failed to show the type of conflict which requires recusal. The court's denial of that motion was a proper exercise of discretion.

### III

Phillips contends his statutory right to a trial within 60 days of his arraignment was violated because of the court's erroneous recusal of his attorney. While Phillips agreed to a number of continuances, he argues his new attorney needed time to prepare, which compelled his unwilling consent. Regardless, Phillips has failed to establish any prejudice on appeal. ■ *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452] and

*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] hold that a defendant must prove prejudice flowing from the delay when seeking postconviction review of a speedy trial claim. "If the issue is raised before trial, however, prejudice is presumed and the information is dismissed." (*People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) Although Phillips' brief states he sought pretrial review of the issue, his citation to the record references the motion made to the trial court, not the required petition for extraordinary writ. Absent a showing of prejudice, we need not review the issue further.

## IV

Phillips' contention the trial court erred in denying his motion to set aside enhancement allegations can be disposed of in similar fashion. Not only does Phillips fail to prove prejudice, as required by *Pompa-Ortiz,* we note some of the allegations were dismissed under Penal Code section 1118.1 and the jury found the remaining allegation not true. There is no error cognizable on appeal.

## V

■    Finally, Phillips contends consecutive sentences for the rape and child molestation were improper. Penal Code section 654 precludes consecutive sentences for separate crimes involving a single intent and objective. However, the two offenses here were separate acts involving separate intent and were properly punished consecutively. (*People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63].)

The judgment is affirmed.

Sonenshine, J., and Wallin, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 1985.