[No. E038503. Fourth Dist., Div. Two. June 9, 2006.]

GERALD ANTHONY RHABURN, Petitioner, v.
THE SUPERIOR COURT OF THE COUNTY OF RIVERSIDE,
Respondent;
THE PEOPLE, Real Party in Interest.

[No. E038620. Fourth Dist., Div. Two. June 9, 2006.]

NOEL BAEZ, Petitioner, v.
THE SUPERIOR COURT OF THE COUNTY OF RIVERSIDE,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jeffrey Van Wagenen for Petitioner Gerald Anthony Rhaburn.

Gary Windom, Public Defender, and Richard V. Myers, Deputy Public Defender, for Petitioner Noel Baez.

No appearance for Respondent.

Grover Trask, District Attorney, and Elise J. Farrell, Deputy District Attorney, for Real Parties in Interest.

**OPINION**

**GAUT, Acting P. J.**—In these cases we are asked to determine whether a public defender whose office has previously represented a witness for the prosecution is subject to automatic (or virtually automatic) disqualification for conflict of interest. Although we cannot establish a bright-line rule, we do hold that disqualification is not mandatory whenever the situation arises; further, that disqualification in one of the two cases before us was clearly improper.

The facts of the two cases are similar, although not identical.

Petitioner Gerald Anthony Rhaburn was arrested on October 8, 2003. After the usual proceedings and several continuances, a trial date of May 16, 2005, was set. The case continued to trail into July, and on July 7, the prosecutor filed a trial brief that included a request that the public defender's office be disqualified because that office had represented witness Cary Barnett, Sr., in a criminal proceeding in 1996. Although the brief was not very illuminating, at the hearing held that date the prosecutor explained that Cary had originally been charged with a crime of moral turpitude—to wit, misdemeanor spousal abuse under Penal Code section 273.5[1]—but had eventually been convicted

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

only of disturbing the peace. (§ 415.) The prosecutor correctly pointed out that the conviction, as a misdemeanor, could not be used to impeach Cary, Sr. (Cf. Evid. Code, § 788, on impeachment by *felony* convictions.) However, he reasoned that the underlying conduct *could* be used for impeachment if it involved "moral turpitude." (See *People v. Wheeler* (1992) 4 Cal.4th 284, 295 [14 Cal.Rptr.2d 418, 841 P.2d 938].) He further informed the court that, in fact, Cary, Sr., had "pushed and shoved" the victim so that the offense *did* involve moral turpitude, and therefore argued that the public defender would have a conflict in using information about the offense "against" Cary.[2]

Objecting, the public defender informed the court that office records of 1996 cases were kept "off-site . . . in a location that I'm not even aware of where it is." His supervisors had instructed him to make no inquiry about the files. He did not join the Riverside Public Defender's office until 2000. Finally, he indicated that he did not feel that the fact that his office had previously represented Cary, Sr., would have any effect on his cross-examination.

The public defender also informed the court that his client strenuously objected to the delay in trial that would be necessitated by the change in attorney. Questioned by the court, Rhaburn indicated that he felt there was no conflict and he wanted to go to trial. However, the court granted the prosecutor's request and disqualified the public defender.

As an attachment to the petition filed in this court, Deputy Public Defender Richard Myers declares that he had personally obtained and reviewed the file relating to Cary, Sr., and that it contained no secrets or confidences pertaining to him. He also declares that the deputy who handled Cary, Sr.'s case was employed by the office for less than six months in 1996 and has not returned.

In the Baez case, petitioner Noel Baez is charged with the attempted kidnapping (§§ 207 & 664) of Elizabeth C., as well corporal injury on a spouse/cohabitant (§ 273.5, subd. (a)) and violating a protective order (§ 273.6, subd. (a)), both with respect to Elizabeth C. Baez was arrested on August 19, 2003, and the complaint was filed on September 16 of that year. After various proceedings and a number of continuances, the matter was finally set for trial on July 11, 2005, and trailed thereafter.

---

[2] The prosecutor, of course, could not have obtained the information that Cary, Sr., "pushed and shoved" the victim from the *public defender's* confidential file. It may have come from information provided to the district attorney's office from the victim, or it may have been included in police reports concerning the incident. Either way, at this point, the public defender obviously has an independent basis for questioning Cary, Sr., on the issue.

On July 20, the district attorney filed a motion to disqualify the public defender. This motion cryptically listed three criminal case numbers (CR-44045, 44046 & 44047) and asked the court to take judicial notice of various pieces of information. From the dockets—which are all that we have—it appears that these cases involved charges against the victim in the current case, Elizabeth C. The docket indicates that she faced numerous charges, including forgery, grand theft, receiving stolen property, and the transportation or importation into the state of a controlled substance for sale. (§§ 470, 496; former § 487, subd. (3); Health & Saf. Code, § 11379, subd. (a).) She was represented at most proceedings—but not all—by a member of the public defender's office. These proceedings terminated in early 1993, at which time Elizabeth C. was found in violation of probation with respect to new charges, and sentenced to prison.

Baez's attorney objected to the delayed filing of the motion to disqualify. He also stated that his office's representation of Elizabeth C. would not affect his trial performance or strategy. However, after brief proceedings, the trial court agreed with the prosecutor and relieved the public defender. It also, on July 21, 2005, declined to consider formal opposition prepared by the deputy public defender, or to allow him to present additional argument. It was similarly unmoved by the representation that petitioner objected, stating that "You were relieved. You no longer represent Mr. Baez." Petitioner had not personally been present on July 20, 2005, due to the fact that he had executed a waiver of personal appearance under section 977; he had not, of course, been aware that the prosecutor would attempt to disqualify the public defender on that date.[3]

The opposition prepared for the trial court did not include any declaration by the deputy public defender. However, he subsequently executed a declaration stating that he had not reviewed any of Elizabeth C.'s criminal files.

## DISCUSSION

First, we must dispose of issues not directly related to the one that has prompted our plenary pretrial review of these cases.

Petitioners—especially Baez—assert that the prosecutor has a "practice" of withholding potential disqualification challenges until the last minute, either to cover up his unreadiness for trial, or to interfere with the defendant's

---

[3] At oral argument, the prosecutor pointed out that Baez's counsel had been notified—possibly by email—of the People's intention to seek disqualification of his attorney. However, the record does not indicate that Baez himself was aware of this or that he had the opportunity to retract his waiver. Thus, his absence cannot be deemed either acquiescence in, or indifference to, the disqualification.

speedy trial rights and choice of counsel.[4] Such assertions—which are not established by competent evidence—are only remotely germane to the primary issue before us. Insofar as the petitions seek the relief of dismissal for violation of petitioners' speedy trial rights, we decline to reach the issues. However, we will direct the trial court to reconsider Rhaburn's motion to dismiss in light of the views expressed in this opinion; Baez is free to bring such a motion upon remand.

Next, real party objects to petitioners' petitions insofar as they offer new material not provided to the trial court. That is, in the Rhaburn case, the declaration of Deputy District Attorney Myers to the effect that he has reviewed the file relating to Cary, Sr., and has determined that it contains no "secrets [or] confidences pertaining to" him and that the attorney who handled the case left the office shortly thereafter; and in the Baez case, the declaration of trial counsel in which he states that he has not reviewed any of the victim's files, as well as Myers' declaration that he has reviewed the only available file relating to the victim and that it too contains no "secrets or confidences."

We recognize, of course, that as a rule a reviewing court is limited to considering the record which was placed before the trial court. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184 at fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; Cal. Court Rules, rule 14(a)(2)(C), briefs must "provide a summary of the significant facts limited to matters in the record.") There is, however, considerable merit to petitioners' argument that, due to the procedures followed by real party, they had no realistic opportunity to collect factual evidence before the trial court ruled.[5] We also note that the trial court refused to accept the written opposition proffered in the Baez case one day after the hearing.[6]

---

[4] See *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, 958 [254 Cal.Rptr. 72], noting the risk that a prosecutor reluctant to litigate against a specific defense attorney may seek to remove him or her "where there is only the hint of a conflict."

[5] In the Baez case, the public defender admitted receiving the motion to disqualify sometime on July 18, a Monday; the hearing was on Wednesday. In the Rhaburn case, the trial brief was filed on July 7—the same date as the hearing. Our record does not contain a proof of service on the public defender. The deputy informed the trial court that his supervisor would wish to be present and address the court, but he was not immediately available.

[6] This opposition was far from complete. It included no competent evidence concerning procedures in the public defender's office with respect to screening attorneys from confidential information acquired in other cases, and it included no information whatsoever about the four deputies who had appeared for the victim at various times in the earlier proceeding. In a declaration filed with this court, Deputy Public Defender Myers states that "M[ichelle] Anderson" left the office in 2002, but three other attorneys are noted on the docket and no mention is made of them.

On the other hand, it was incumbent upon the public defender at least to make as full an oral record as possible.[7] However, we find it is unnecessary formally to consider the new matter. We do note that although factual assertions contained in the briefs on appeal alone, or otherwise not presented to the trial court, may not be the basis for our decision, it can be appropriate for a reviewing court to consider such assertions or presentations in order to assess the likely future course of the case if an order is reversed. This is especially true if evidence has been effectively excluded by the trial court. (See *Taylor v. S & M Lamp Co.* (1961) 190 Cal.App.2d 700, 708–709 [12 Cal.Rptr. 323].)[8]

As a third point, we must emphasize that, although there was some discussion at oral argument on the matter, these petitions neither require nor permit us to prescribe procedures the public defender must follow in analyzing the possibility of conflict. The system depends on the willingness of attorneys to comply with their ethical duties and to bring "close calls" to the attention of the court. All we do in this opinion is attempt to provide some guidance for recognizing what is, and is not, a "close call."

We proceed now to the merits.

It is well established that in considering a motion to disqualify counsel, the "paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705 [3 Cal.Rptr.3d 877] (*Jessen*).) On review, the standard is "abuse of discretion."[9] (*People v. Jones, supra*, 33 Cal.4th at p. 244.) The party resisting disqualification bears the burden of establishing the facts making disqualification inappropriate, and we "accept[] as correct all of [the trial court's] express or implied findings supported by substantial evidence." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 [117 Cal.Rptr.2d 125].)

---

[7] In the Baez case, a deputy who is apparently trial counsel's supervisor told the court that "[trial counsel] has affirmatively represented to the court and to the People that he has no access to any such file and that he has no secrets or confidences such as would disqualify him." However, this was incorrect. In fact, trial counsel had said nothing about access to the victim's files and his earlier statements that "We don't have any confidences . . . or secrets or anything of that nature" had no visible foundation.

[8] See also Code of Civil Procedure section 909, which allows the reviewing court, in cases where there is no right to a jury, to take additional evidence either to make factual findings "or for any other purpose in the interests of justice." The statute is to be "liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal . . . ." (*Ibid.*)

[9] Where the court disqualifies an attorney in a criminal matter without adequate cause, the defendant's Sixth Amendment rights may also be directly implicated. (See *People v. Jones* (2004) 33 Cal.4th 234, 242–245 [14 Cal.Rptr.3d 579, 91 P.3d 939].)

The People's position in these cases is that because the public defender's office previously represented a witness and/or victim, and now represents the charged defendant, there is an inherent conflict of interest and the current representation is adverse to the former client. The People maintain that there is an *irrefutable* presumption that the public defender is in the possession of information acquired from the witness in confidence in the course of the previous representation and that the information is of such a nature that it could be used "adversely" to the witness in this case.

■  The foundation of the People's argument is rule 3-310(E) of the California Rules of Professional Conduct, which provides that an attorney may not "without the informed consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."[10] Interpreting the rule in the context of the public defender, consistent with the predecessor of this rule, the State Bar issued an opinion to the effect that the public defender— meaning the entire office—should be disqualified from representing a defendant if a previous client is also involved in the case as a potential witness. (State Bar Standing Com. on Prof. Responsibility & Conduct, Formal Opn. No. 1980-52.)[11]

We recognize that the rule against the successive representation of adverse interests has two purposes: "to prevent clients . . . from being placed in . . . a precarious position," and " 'as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.' [Citation.]" (*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1043 [117

---

[10] We will accept that insofar as the public defender will probably attack the credibility of the witnesses, the representation of petitioners is "adverse" to the interests of the former clients.

[11] Petitioners argue that the People's "conflict theory is obviously taken verbatim from" a depublished opinion. The implicit criticism is misplaced. The Supreme Court has repeatedly warned lower courts to exercise extreme caution in reading anything into a depublication order. (See *People v. Saunders* (1993) 5 Cal.4th 580, 592 at fn. 8 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) Indeed California Rules of Court, rule 979(d) affirmatively states that a depublication order is "not an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion." Assuming that the People *did* "crib" the analysis from the depublished case, there is nothing wrong with that. Even the Supreme Court has at times openly acknowledged that its analysis of an issue is based upon that set forth in a decision of the Court of Appeal which it had ordered depublished. (See *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242 at p. 254, fn. 9 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) The "vice" in the People's allegedly analytical approach is not that it is based upon a depublished case, but simply that we do not agree with it.

Cal.Rptr.2d 685].) Thus, it is not only the interest of the former client that is to be considered, but the conscience of the attorney; it is the intent of the rule to remove—forcibly if necessary—the attorney from the path of temptation. (See *Anderson v. Eaton* (1930) 211 Cal. 113, 116 [293 P. 788], cited in *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 289 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

The application of the rule against successive representation, of course, presupposes that there *is* the possibility of temptation. The People argue that where the two matters are "substantially related," it is conclusively presumed that the attorney acquired confidential information from the first client. (*Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609].) This presumption protects the former client, who can never know (or prove) what is in the mind of his former attorney. (*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1453 [280 Cal.Rptr. 614].) It also serves the public interest by preserving public trust in the integrity of the bar and the judicial system. (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971].) The result of this presumption is that the attorney must be disqualified upon the demand of the previous client. (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 113 [14 Cal.Rptr.2d 184].) Furthermore, the People argue, when an attorney possesses (or is deemed to possess) confidential information acquired from a client as to whom he is now in an adverse position, the entire firm must be disqualified. (*Id.* at p. 117.)

However, a rigid rule of disqualification can create hardship to the new client and can also be abused as an improper tactical maneuver. (*River West, Inc. v. Nickel* (1987) 188 Cal.App.3d 1297, 1309 [234 Cal.Rptr. 33].) More recent civil cases have taken a more pragmatic view, and declined to order disqualification of a firm if the challenged attorney is *unlikely in fact* to have acquired confidential information from the former client. In *Jessen, supra,* 111 Cal.App.4th 698, plaintiff sued his insurer over a denial of coverage. His attorney had previously worked for a firm that had represented defendant in numerous coverage actions. Rather than apply a rule of automatic disqualification, however, the appellate court directed that disqualification would only be required if the attorney, by reason of the nature of his work for the insurer, had a "direct and personal" relationship with the client. If he did, the presumption of possession of confidential information would be applied. If the attorney's involvement with the client was "peripheral or attenuated," however, the court would be obliged to examine the particular circumstances of the matter to determine whether in fact it was *likely* to have acquired

confidential information. If not, disqualification would not be mandatory. (*Jessen, supra,* 111 Cal.App.4th at pp. 709–710.)[12]

A similarly flexible approach was taken in *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752 [23 Cal.Rptr.3d 116] (*Goldberg*). There, six years earlier the plaintiff had consulted "informally" with Attorney X, then a member of a firm. Three years later, Attorney X left that firm. Plaintiff's action involved a matter "substantially related" to her consultation with Attorney X. In the current lawsuit, defendant was represented by the firm, and plaintiff moved to disqualify the entire firm. On appeal, the court refused to apply any presumption that the *current* members of the firm had been "tainted" by their distant contact with Attorney X; it held that disqualification was unnecessary.

A third significant case involved the situation in which plaintiff's lawyer had previously worked at a firm then representing defendant in matters involving certain issues related to the current litigation. However, that attorney had nothing to do with those matters and had left that firm 10 years before the current litigation commenced. In *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1333–1335 [104 Cal.Rptr.2d 116] the court declined to recognize a sort of "reverse imputation" under which the firm's undisputed possession of confidential information was imputed to the individual attorney. As in *Goldberg,* the trial court was instead directed to consider "dispassionately" whether the attorney "was reasonably likely to have obtained confidential information material to the current lawsuit" during his former employment. (*Id.* at p. 1335.)

Finally, moving into the "public sector" area, the court in *City of Santa Barbara v. Superior Court* (2004) 122 Cal.App.4th 17, 24–27 [18 Cal.Rptr.3d 403], held that the disqualification of a city attorney's office was not required even though the attorney for the plaintiffs in a property damage suit against a city accepted a position in the city attorney's office during the litigation. On the record presented, the court found that the "ethical wall" was adequate to ensure that the attorney would not pass on any information to the deputy city attorney handling the city's defense in that matter. Implicit in the decision is the understanding that the attorneys involved could be trusted to obey not only the instructions of their superiors, but also the obvious dictates of their ethical duties.

Thus, in the 25 years since the State Bar issued its opinion, courts have begun to develop flexible strategies for dealing with potential conflicts, and,

---

[12] Although the opinion does not provide specific examples, it appears that a line might well be drawn between a partner who actively confers with the client, and a low-level associate doing "drudge work" on the case.

in many cases, to reject automatic rules for disqualification. This has also proven true in the criminal context. We find a series of cases from our Supreme Court to be instructive. While we recognize that, as the People point out, these cases arose on appeal rather than before trial, we cannot blind ourselves to the plain import of the decisions.

First, in *People v. Clark* (1993) 5 Cal.4th 950 [22 Cal.Rptr.2d 689, 857 P.2d 1099], the defendant claimed that his Sixth Amendment right to conflict-free counsel had been violated because one of his attorneys, in his capacity as head of the public defender's office, had previously represented four prosecution witnesses. Counsel had *personally* represented one of the witnesses and the court assumed that he had, in fact, obtained confidential information from this witness. Accordingly, the court acknowledged that there was at least a potential conflict of interest.[13] (*Id.* at p. 1002.) With respect to the other three witnesses, however, the attorney stated to the court that he did not possess any confidential information about them and that his cross-examination would not be affected by the prior representation.[14] The Supreme Court commented that, in the circumstances, "no actual *or potential* conflict resulted from the representation of [the witnesses] by the public defender's office." (*Id.* at p. 1001, italics added.) That is, the court *accepted* counsel's representation and at least declined to apply a rule of implied receipt of confidences.

Next, in *People v. Lawley* (2002) 27 Cal.4th 102 [115 Cal.Rptr.2d 614, 38 P.3d 461], it was undisputed that defendant's advisory counsel had recently been appointed to represent a prosecution witness in unrelated criminal proceedings. Worse, disposition of the witness's case depended upon her "truthful" testimony in defendant's case. Advisory counsel represented to the court that even though he had met with the witness after accepting appointment, he had not discussed her case and had not received confidential information. He also indicated that he would feel no compunction to "pull any punches."[15] (*Id.* at p. 144.) The Supreme Court again noted that the trial court was justified in "rely[ing] on the representations of defense counsel that no conflict exists." (*Id.* at p. 146, citing *U.S. v. Crespo de Llano* (9th Cir. 1987)

---

[13] However, because the attorney left the cross-examination of the witness to cocounsel, and, as an officer of the court, represented that he would not disclose any information about the witness to cocounsel, the interests of the *witness* were protected. As the court noted, if the attorney had breached his duty of loyalty to the witness, this could hardly "have worked to the detriment of defendant." (*People v. Clark, supra,* 5 Cal.4th 950, p. 1002, at fn. 23.)

[14] The opinion is not completely clear but it appears that these witnesses may have been represented by one or more different attorneys from the public defender's office, and not the attorney in question.

[15] By the time of this hearing, all charges had been dismissed against the witness who was ill. The possibility remained that they might be refiled, however.

838 F.2d 1006, 1012.) As in *People v. Clark*, the court found that the record failed to reveal even a *potential* conflict. (*U.S. v. Crespo de Llano, supra,* 838 F.2d 1006, 1012.)

The third case we wish to note is *People v. Cox* (2003) 30 Cal.4th 916 [135 Cal.Rptr.2d 272, 70 P.3d 277]. Although defendant raised several conflict claims, we are particularly concerned with the claim that a prosecution witness had previously been represented by an attorney *in the same firm as defendant's counsel.* "Tapson also stated that he had no confidential information regarding [the witness] stemming from his firm's prior representation of him. Based on this record, we hold that no actual *or potential* conflict of interest existed. . . ." (*Id.* at p. 950, italics added.)

Most recently, in a fourth case, the court has confirmed that in the "prior representation of a witness" situation, "when the attorney has not received any pertinent confidential information from the witness, ordinarily there is no actual *or potential* conflict of interest." (*People v. Cornwell* (2005) 37 Cal.4th 50, 75 [33 Cal.Rptr.3d 1, 117 P.3d 622], citing *Cox*, italics added.)

Although, on appeal, the critical issue in claims of conflicted counsel is whether the conflict *actually* adversely affected the attorney's representation (*People v. Lawley, supra,* 27 Cal.4th 102 at p. 146; *People v. Bonin* (1989) 47 Cal.3d 808, 837–838 [254 Cal.Rptr. 298, 765 P.2d 460]), *People v. Clark, People v. Lawley,* and *People v. Cox* were not decided solely on the basis that the record reflected no adverse *consequence* of any conflict. Rather, as we have stressed above, in each case the court determined that there *was* no conflict, actual *or* potential, and it did so on the basis of trial counsel's averments and representations to the trial court.

■ Certainly this approach is inconsistent with the rigid rule in civil cases that *presumes* the possession of confidential information and turns a deaf ear to counsel's protestations that he does not in fact possess any such information.[16] In a *civil* case, the Supreme Court has confirmed the viability of this rule as recently as 1999 in the case of *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371], in which the court also reconfirmed the rule of vicarious disqualification. However, the Supreme Court's focus on the factual issue of whether actual or potential conflict existed in the *Clark* line of cases strongly suggests that a different approach is appropriate in the criminal context. Thus, counsel's former representation of a prosecution witness does *not* compel the assumption that confidential information was

---

[16] Still less sympathy is given to the protestation that "If I do know anything, I won't disclose it;" hence the reluctance to accept ethical walls.

acquired from the witness. (See also *Vangsness v. Superior Court* (1984) 159 Cal.App.3d 1087, 1090–1091 [206 Cal.Rptr. 45] [cited in *People v. Cox*], in which the court found no difficulty in accepting a public defender's representation that he possessed no confidential information about a former client of his office who would be a witness for the prosecution.)

We perceive several possible justifications for declining to apply a rigid presumption in these cases. The first, particularly applicable to the public defender's office, is that "[u]nlike their private sector counterparts, public sector lawyers do not have a financial interest in the matters on which they work. As a result, they may have less, if any, incentive to breach client confidences. [Citation.]" (*City of Santa Barbara v. Superior Court, supra,* 122 Cal.App.4th at p. 24.) Certainly the public defender need not worry about attracting new clients or retaining the loyalty of former clients; it has a steady source of supply and is not dependent on referrals or solicitation. (See *Castro v. Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1442 [284 Cal.Rptr. 154].)

The reverse of this argument is that the interest of the former client is also marginal. Unlike the private client involved in expensive civil litigation, the economic interests of a witness or victim are not at stake. The possibility that counsel's devastating cross-examination would ever lead to a perjury charge (or even public embarrassment) is extremely tenuous. Nor does the public defender's client select an attorney on the basis of perceived compatibility and trustworthiness; he accepts the representation because he must, not because he desires a confidant.[17]

Second, it is beyond dispute that many, if not all, public attorney offices handle a high volume of cases, and this clearly applies to the public defender. This factor is entitled to substantial consideration in these cases, given the fact that several years have elapsed since the witnesses were represented by the public defender and that the cases of both Cary, Sr., and Elizabeth C. involved relatively trivial cases. There is good reason to assume that the average public defender is unlikely to remember any confidential information imparted by the average past client without a great deal of coaxing,[18] and no reason to suppose that such information remains permanently floating in the office ether or is the subject of repeated conversations. The risk that confidential information will be passed through casual "watercooler" conversations is substantially less than in the private sector.

---

[17] Indeed the files of every court are replete with instances of criminal defendants who exhibit the utmost distrust and suspicion of their attorneys.

[18] In *People v. Cornwell, supra,* 37 Cal.4th 50, the defense attorney had represented the wife of a witness in the couple's joint trial on drug charges nine years previously; he represented that he had no recollection of the case. We suspect that this represents the "norm" for busy defense attorneys.

Third, frequent disqualifications substantially increase the cost of legal services for public entities. (See *In re Lee G.* (1991) 1 Cal.App.4th 17, 28 [1 Cal.Rptr.2d 375].) It has been held that if there would be only "speculative or minimal benefit," the "dislocation and increased expense of government" caused by disqualification are unjustified. (*People v. Municipal Court (Byars)* (1978) 77 Cal.App.3d 294, 301 [143 Cal.Rptr. 491].) A related issue is that public law offices often develop specific expertise in particular areas of law, and disqualification may deprive the People of the benefits of this acquired and cultivated expertise. (See *City of Santa Barbara v. Superior Court, supra*, 122 Cal.App.4th 17, 23 at fn. 1.)[19]

The last factor to note is defendants' interest in conflict-free counsel. Petitioner Rhaburn expressly indicated that he wanted the public defender to continue; Baez's counsel attempted to place on the record that Baez also objected to his removal. We do not dispute that the trial court has the authority to remove appointed counsel over a defendant's wishes if it is necessary to do so to protect the client's Sixth Amendment right to conflict-free counsel. (*People v. Jones, supra*, 33 Cal.4th at pp. 244–245.) However, *People v. Jones* is distinguishable.[20] In that case—a murder prosecution —counsel for defendant admitted that he was "very uneasy" due to the nature of the relationship his office—and he himself—had had with a potential third-party culprit. He found it "very troublesome." Queried about the possibility that the former client might sue him, he further acknowledged that it might "cause him to 'flinch in this case.' " (*Id.* at p. 239.) Although defendant strongly requested that counsel be allowed to remain, the trial court believed that he was entitled to an attorney who would vigorously pursue all avenues of defense, and the Supreme Court affirmed.[21]

---

[19] We do not, however, find petitioners' "public sector" cases quite as convincing as petitioners hope, largely due to the dearth of information provided to the trial court here concerning the manner in which individual deputies are routinely prevented from acquiring information about the office's previous clients. The cases on which petitioners rely involved far more detailed factual showings (see, e.g., *City of Santa Barbara v. Superior Court, supra*, 122 Cal.App.4th at p. 21), and in some cases the offices of the allegedly conflicted attorneys were physically and administratively separated. (E.g., *People v. Christian* (1996) 41 Cal.App.4th 986, 992–993 [48 Cal.Rptr.2d 867], in which the alleged conflict involved separately maintained offices of the public defender and an "alternate defender.")

[20] Not only is *People v. Jones* distinguishable on the facts, but also on the law. *People v. Jones* is a Sixth Amendment case and holds only that the removal of potentially conflicted counsel does not violate a defendant's right to counsel. Defendant did *not* argue that the court committed an abuse of discretion. (See *People v. Jones, supra*, 33 Cal.4th at p. 244, fn. 2.) On the facts of *Jones*, such an argument would have certainly failed.

[21] The defendant even informed the court that he wished counsel to "drop" the third-party inquiry, thus arguably removing any conflict. This was especially surprising, because the hypothetical culprit was a man with whom defendant had had a hostile relationship and thus would not naturally wish to protect. It is difficult to avoid suspecting that defendant was attempting to build error into the case no matter what the court did.

Here, by contrast, there is *no* conflict. Both deputy public defenders have credibly represented that they feel no constraints in investigating or examining the former-client witnesses. They have no personal loyalty to the witnesses and no motive to "pull their punches." In that situation, the current client's expression of willingness to continue with an attorney with whom he has formed a relationship should be respected.

■ In summary, and based on policy as well as practicality, we are persuaded that the trial courts erred in applying a rigid rule of vicarious disqualification in the situation presented by the cases before us. In neither case did trial counsel have a "direct and personal" relationship with the witness, and the *direct* acquisition of confidential information need not (and should not) be presumed. (*Jessen, supra*, 111 Cal.App.4th 698, 705.) Instead, the trial court should evaluate the totality of the circumstances in determining whether there is a reasonable possibility that the individual attorney representing defendant either *has* obtained confidential information about the witness collected by his or her office, *or* may inadvertently acquire such information through file review, office conversation, or otherwise. In making this determination, important factors will include: 1) the length of time that has elapsed since the witness was represented by the public defender's office; 2) the nature and notoriety (*vel non*) of the witness' case; 3) whether the current attorney was a member of the public defender's office at the time of the witness' case, and whether the attorney responsible for the witness' case remains with the office; 4) the nature and extent of any measures or procedures established by the public defender to ensure that information acquired by one deputy in a previous case is made unavailable to the current attorney. We also stress in a case that does not involve "direct and personal" representation of the witness, the courts should normally be prepared to accept the representation of counsel, as an officer of the court, that he or she has not in fact come into possession of any confidential information acquired from the witness and will not seek to do so.

Applying these rules to these cases, we conclude that the trial court's order of disqualification in the Rhaburn case must be overturned, at least conditionally. Cary, Sr.'s criminal prosecution and defense took place in 1996. Trial counsel did not join the office until 2000 and has no idea where the file might be kept. Cary, Sr.'s case was trivial and was disposed of without trial. Neither is the current case against Rhaburn in any way remarkable; there is no reason

to suppose that anyone but trial counsel is interested in the witness list. Thus, it is simply inconceivable that information about Cary, Sr., is currently circulating in the public defender's office and will somehow alight on counsel's desk.[22] (And see also fn. 2.)

However, because the trial record is far from complete, when the case returns to the trial court, that court may require petitioner to place on the record before it either formal representations concerning Cary, Sr.'s counsel, a representation no confidential information is contained in Cary, Sr.'s file, or supplemental information concerning the public defender's procedures to ensure that trial counsel will not acquire access to the file, or all of the above.

In the Baez case, as we have noted, the showing by petitioner was clearly deficient. We do not believe that a simple statement that "the file is in storage" will always be sufficient to negate any realistic suspicion that confidential information may be available to trial counsel. The Baez case is also potentially more difficult than the Rhaburn case because Elizabeth C. was apparently represented by several deputy public defenders. But as we have suggested, the not-so-deliberate speed with which the proceedings were accomplished in large part excuses the deficiencies in the showing by petitioner Baez. In light of our overall conclusions we deem it appropriate to require the trial court to conduct a new evaluation in that case, and to consider whatever supplemental materials petitioner wishes to present.[23]

## DISPOSITION

The petitions for writ of mandate are granted in part and denied in part, as follows: in *Rhaburn v. Superior Court*, the trial court is directed to vacate its order disqualifying the public defender and instead to deny the motion, unless, after such further proceedings as it deems appropriate, it determines that there is a reasonable possibility that confidential information may be acquired and used by counsel. In *Baez v. Superior Court*, the trial court is directed to set the matter for a noticed hearing and to determine the issues in

---

[22] If, in fact, the attorney who personally represented Cary, Sr., left the office shortly thereafter, the impropriety of any presumption that trial counsel has, or could, acquire any confidential information would be even clearer.

[23] Both of our cases are readily distinguishable from *Leversen v. Superior Court* (1983) 34 Cal.3d 530 [194 Cal.Rptr. 448, 668 P.2d 755]. Although that case also involved a criminal defense attorney's prior involvement with a witness, the attorney *himself* sought to withdraw and affirmatively represented to the court that he *did* possess confidential information about the witness acquired during his office's representation of that witness.

accordance with the views expressed in this opinion. In all other respects the petitions are denied without prejudice. Petitioners are each DIRECTED to prepare and have a peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Hollenhorst, J., and King, J., concurred.