Filed 3/14/25  P. v. Mulato CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN MULATO, JR.,<br><br>    Defendant and Appellant. | G063590<br><br>(Super. Ct. No. INF2101507)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Francisco Navarro, Judge. Affirmed in part, reversed in part, and remanded.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Juan Mulato, Jr., appeals from the judgment convicting him on charges of attempted murder, making a criminal threat, and unlawful possession of a firearm.

Mulato does not attack the substance of his convictions; instead, he challenges his sentence. He argues first that the court erred by failing to stay his sentence on the criminal threat conviction because both the threat and the attempted murder were part of a continuous course of conduct with a single indivisible intent. We are not persuaded; as a result, we affirm that aspect of the judgment. The evidence supports both the conclusion that Mulato's original intent was to scare his victim and that his intent changed to an attempt to kill after the victim's wife appeared on the scene. The evidence also supports the conclusion that he harbored both intentions simultaneously. Either is sufficient to support imposition of the separate sentence.

Mulato further argues the court erred in concluding it lacked discretion to impose a concurrent sentence on count three, and thus it failed to exercise that discretion. We agree. The record demonstrates the court believed it was obligated to sentence Mulato consecutively on count three. We consequently reverse on that aspect of the judgment and remand the case to the trial court with instructions to exercise its discretion.

The Attorney General agrees with Mulato's contention that the court was similarly unaware it had discretion to impose a concurrent

2

sentence on count two—the criminal threat. We therefore reverse and remand that aspect of the judgment as well and instruct the court to exercise its discretion in reconsidering that issue.

## FACTS

In August of 2021, Mulato's girlfriend telephoned the wife of the victim, who was her cousin, to complain that the victim had said disparaging things about her to Mulato.

The victim denied saying such things; the issue escalated as Mulato and the victim—who had been acquainted since childhood—exchanged hostile calls and messages. Mulato told the victim that he wanted to meet him "in the desert," and he was going to "put [him] six feet under."

The two men decided to meet at the park near the victim's home. Despite Mulato's threat, the victim did not expect anything more than a fist fight, so the victim went to the park unarmed.

As the victim arrived at the park, Mulato was pulling up in a gray van. Mulato exited the van on the passenger side; he had a gun in his hand. Mulato first pointed it at the victim; he then pointed it downward and shot it at the victim's feet. After firing the first shot, Mulato asked the victim, "what [are you] going to do now?"

The victim tried to de-escalate the situation as he said, "we can fix things by just a regular fist fight and leave the gun." Mulato replied he was going to "kill [the victim] right there and then," and pointed the gun at him as the victim continued walking toward Mulato.[1] When the victim got

---

[1] The victim explained he chose to approach Mulato and attempt to de-escalate the situation, rather than turning and running away, because he feared that if he ran, Mulato would shoot him in the back.

close enough, Mulato hit his left ear with the gun. Approximately five to 10 seconds after Mulato hit the victim with his gun, he shot the victim in the torso.

After shooting the victim, Mulato "got in the van and sped off." The victim put pressure on his wound while his wife called 911.

Mulato was charged with willful and premeditated attempted murder (Pen. Code, [2] §§ 664, 187, subd. (a); count 1); with making a criminal threat (§ 422; count 2); and with illegal possession of a firearm (§ 29820; count 3). The information also alleged in connection with count one that Mulato personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and in connection with count two that he personally used a firearm (§ 12022.5, subd. (a)). It also alleged Mulato had a strike prior.

The jury convicted Mulato on all counts and found true that he personally discharged a firearm causing great bodily injury in connection with count one, and also that he personally used a firearm in connection with count two. Mulato admitted to having a prior strike conviction. (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

The court sentenced Mulato to a term of 14 years to life for attempted murder, with a consecutive term of two years and eight months for the criminal threat, a consecutive term of three years for the firearm enhancement, and a consecutive term of one year and four months for the illegal possession of a firearm.

---

[2] All further statutory references are to the Penal Code.

DISCUSSION

Mulato first contends the court violated section 654, subdivision (a), by imposing a sentence on count two, making a criminal threat. Section 654, subdivision (a), provides as follows: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

As explained in *People v. Latimer* (1993) 5 Cal.4th 1203, 1208 (*Latimer*), "'[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses, but not for more than one.'" Thus, if multiple offenses are "merely incidental to, or were the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*Ibid.*)

According to Mulato, his criminal threat was not divisible from his attempt to murder and thus could not be separately punished because both were part of a continuous course of conduct and the acts were carried out with a single objective, which was to kill the victim. Thus, under section 654 and *Latimer*, only one punishment could be imposed.

The determination of whether a defendant had multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal. (*People v. Braz*

(1997) 57 Cal.App.4th 1, 10.) We conclude the evidence in this case supports the court's finding of multiple intents.

Mulato first argues the trial court applied the law incorrectly, by improperly focusing on the divisibility of his acts, rather than on his intent. We disagree. While the court did observe that Mulato's course of conduct could be broken down into acts that constituted his separate offenses—including that Mulato threatened his victim "with a gun" and by "pistol-whipp[ing]" him—it did so for the purpose of illustrating that the distinction between Mulato's acts "require[d him] to process things a little differently, and [he] chose to do these things even though they were close in time."

In arguing that his acts were part of a continuous course of conduct with a single objective, Mulato focuses on the fact that at trial the prosecutor argued Mulato's statement "I'm going to kill you" was evidence which supported both the criminal threat and the attempted murder charge. According to Mulato, that indicated the prosecution believed Mulato had already formed the intent to kill when he made the criminal threats, and thus his entire course of conduct was carried out with the single intent to kill his victim. But the issue before us is not whether the evidence could have supported the finding of a single intent, or whether that was the prosecutor's claim; the issue is whether the evidence also supports the finding of separate intents.

As the court explained, its determination that Mulato intended to threaten his victim was based not only on his words but on his conduct. When he arrived at the scene, Mulato pointed the gun at his victim. But rather than shooting the victim, Mulato lowered the gun and shot at the ground near the victim's feet. He then verbally challenged the victim by asking him what he was going to do in response. That is consistent with an intent to scare the

victim rather than to kill him. And that is just what the prosecutor argued: "When you are holding a gun after firing into the ground and saying 'I'm going to kill you,' no one is thinking that is anything other than a threat."

When the victim sought to de-escalate the situation and walked toward Mulato, Mulato still made no attempt to shoot him. Rather, Mulato threatened to kill the victim "right there and then" before choosing instead to pistol-whip him. Several seconds later, Mulato shot him.

All of those facts suggest Mulato's initial intention was to scare his victim with the gun, rather than to kill him. That intention changed when the victim's wife appeared and disrupted the plan.

Contrary to Mulato's suggestion, that theory is consistent with the prosecutor's argument. Although the prosecutor did argue that Mulato may have formed his intent to kill prior to his arrival at the scene and that his premeditation was demonstrated in part by his statement that he would kill his victim, the prosecutor also explained to the jury that premeditation can happen "almost instantly." Thus, he asserted Mulato could have stopped at the threatening words and conduct, but he instead "kept going." This was evidence of his "premeditation and deliberation."

In any event, Mulato's argument ignores the fact a defendant may be driven by multiple intents during a single course of conduct, and those intentions can support separate punishments under section 654. Thus, in *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 95 (*Raymundo*), the appellate court concluded the defendant could be punished for both an assault that was intended to harm the victim physically, and for criminal threats that were intended to harm the victim psychologically, arising out of a single course of conduct. Similarly, in *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1046-1047 (*Mejia*), the court explained that although the defendant's

7

criminal threats and physical torture were all part of a single "campaign to terrorize [the victim]," section 654 did not preclude imposing separate punishment for the threats because "for purposes of section 654, the question is whether the criminal threats were committed in furtherance of the crime of torture." Because the court concluded they were not, they could be separately punished. We reach the same conclusion here.

Mulato argues in his reply brief that both *Raymundo* and *Mejia* are distinguishable because in those cases, significantly more time had passed between the physical attack and the psychological threats. But as stated in *People v. Harrison supra,* 48 Cal.3d at 335, "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." Thus, the short time between Mulato's criminal threats and his attempted murder is not dispositive. Indeed, the two separately punishable intents can occur simultaneously. (See *Latimer, supra*, 5 Cal.5th at p. 1216 ["we do not intend to question the validity of decisions finding consecutive, and therefore separate, intents, and those finding different, if simultaneous, intents"].)

Because the evidence supports the trial court's decision to separately punish Mulato's criminal threats, we find no error in its ruling.

## II.

### CONSECUTIVE SENTENCE ON COUNT THREE

At the sentencing hearing, the prosecutor argued that although he "had recommended that Count 3 be concurrent," he was amending that recommendation "because Mr. Mulato has a strike prior, it must run consecutive." The court agreed, stating "[b]ecause you have that prior strike conviction, I have to run Count 3 consecutive."

8

Mulato argues, and the Attorney General concedes, section 667, subdivisions (c)(6) and (7) require consecutive sentencing only when the relevant serious or violent offenses are not committed on the same occasion or do not arise from the same set of operative facts—which is not the case here. (*People v. Hendrix* (1997) 16 Cal.4th 508, 512-513.) We also agree. We consequently remand this case to the trial court to allow it to exercise its discretion in determining whether count three should be sentenced concurrently or consecutively.

## III.

### CONSECUTIVE SENTENCE ON COUNT TWO

Finally, Mulato argues that the court's misunderstanding of its discretion to impose a concurrent sentence on count three also suggests it did not understand it had the discretion to impose a concurrent sentence on count two. The Attorney General again concedes. Counts two and three are similarly situated with respect to the court's sentencing discretion, and we have no reason to believe the court understood its authority with respect to one but not the other as it imposed Mulato's sentence.

We consequently direct the trial court, on remand, to also exercise discretion in deciding whether Mulato's sentence on count two should run consecutively or concurrently.

## DISPOSITION

The judgment is reversed in part, and the case is remanded to the trial court with directions to exercise its discretion in determining whether the sentences imposed on counts two and three should run consecutively or concurrently, and to resentence Mulato accordingly. In all other respects the judgment is affirmed. Upon resentencing, the court is directed to prepare an

9

amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

GOETHALS, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

MOTOIKE, J.